[Civ. No. 3352. First Appellate District, Division Two.—May 3, 1920.]

ETHEL KEEPERS PATTERSON, Respondent, v. MONNIE BLACKBURN, Appellant.

[1] PLEADING—FRAUD—UNVERIFIED ANSWER TO VERIFIED COMPLAINT—ADMISSIONS.—In an action by a wife against her husband and another to recover certain real property which the defendant husband by fraudulent practices induced plaintiff to convey to him and which he in turn conveyed to his codefendant, who, it is alleged, was not a *bona fide* purchaser without notice, if the complaint is verified, an unverified answer by the defendant husband constitutes an admission on his part of the fraud practiced by him upon plaintiff.

[2] APPEAL—NOTICE OF—ERROR IN DATE—PARTY RESPONSIBLE—EFFECT OF.—Where the prevailing party, in giving notice of decision and entry of judgment, makes an erroneous statement as to the date, and the adverse party, in giving notice of appeal, states that he appeals from a judgment entered on that date, the prevailing party will not be heard to urge that such notice of appeal is ineffectual.

[3] HUSBAND AND WIFE—CONFIDENTIAL RELATIONSHIP—BREACH OF—FRAUD.—The least overreaching or misrepresentation by a husband through which he gains the property of his wife is a violation of the highly confidential relationship which it is the policy of the law to uphold, and is, therefore, fraudulent.

[4] ID.—KNOWLEDGE OF WRONGS OF HUSBAND—RELIANCE UPON PROMISES TO DO RIGHT—FOREGOING OF LEGAL REMEDIES—RATIFICATION OF FRAUD.—Neither the fact that the wife, after knowledge of the fraud practiced upon her by her husband by reason of which she was induced to convey certain property to him, accepted his importunities to forego her legal remedies and quitclaimed the property to him, relying upon his renewed promises to sever his meretricious relations with another, which promises he did not keep, nor

the fact that in a subsequent action for divorce she failed to describe the property in question, constituted a ratification of the original fraud of the husband, as against his paramour who was a party to such fraud and to whom he had conveyed the property.

[5] ID.—ADVANCEMENTS BY PARAMOUR TO HUSBAND—DUTY OF WIFE TO REPAY—EQUITY.—A court of equity, on determining that an unfaithful husband had defrauded his wife of her property and transferred it to his partner in the entire wrong is not required to compel the wife to adjust the money arrangements between those who wronged her as a condition of the return of her own property.

APPEAL from a judgment of the Superior Court. of Los Angeles County. Frederick W. Houser, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. L. Abrahams, P. B. D'Orr, Claude B. Morton and Frank G. Tyrrell for Appellant.

R. P. Jennings for Respondent.

BRITTAIN, J.—One of the defendants only appeals from the judgment, by which it was decreed that the plaintiff owned two pieces of property in Los Angeles, with a direction that conveyance should be executed by each of the two defendants of the properties to the plaintiff. Judgment followed the trial in which an advisory jury was impaneled to try the principal issues presented by the pleadings.

The plaintiff sued her husband and the appellant, alleging that she was the owner of the properties designated, respectively, "the apartment house" and "the bungalow" properties, which, by the fraudulent practices of her husband, she had been induced to convey to him and which he in turn conveyed to the appellant, who, it was alleged, was not a *bona fide* purchaser without notice. [1] The complaint was verified. The husband's answer was not verified, and, therefore, under the law, it constituted an admission on his part of the fraud practiced by him upon his wife. His co-defendant, the appellant, answered, setting up ownership of the properties in herself and denying substantially all the facts upon which the plaintiff relied for recovery. As to each of the properties specific interrogatories were submitted to the advisory jury, which returned a verdict in

favor of the plaintiff and determined, in the first instance as a matter of fact, that the appellant was not a *bona fide* purchaser for value. [2] On return of the verdict, on March 26, 1918, the clerk made a minute entry of what purported to be a judgment, such as would have been entered had the case been one at common law. This purported judgment was formally entered March 30, 1918. On March 28, 1918, judgment and decree was signed by the judge who presided at the trial, reciting that he adopted the findings of the jury. It was formally entered April 4, 1918. On April 5, 1918, the attorney for the plaintiff served upon the attorneys for the appellant a notice that "on March 30, 1918, the verdict of the jury and judgment thereon and judgment and decree in favor of the plaintiff was entered by the clerk of the court." Motion for new trial on the part of Monnie Blackburn was denied, and notice of appeal was filed. The notice of appeal, entitled in the cause, stated that Monnie Blackburn appealed "from the judgment heretofore entered herein on the thirtieth day of March, 1918, and the whole thereof."

On behalf of the respondent it is urged that because the first entry by the clerk was premature and without authority, the notice of appeal was ineffectual. (*Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, [147 Pac. 238].) The clerk's minute entry of March 26th, entered on March 30th, was not a judgment. The only judgment was that rendered on March 28th and entered on April 4, 1918. The addition of the date in the notice of appeal in describing the only judgment in the case must be disregarded in view of the notice of entry of judgment served by the attorney for the respondent. A highly technical contention, based on an erroneous statement made in the first instance by counsel making the technical contention, should not be made the basis of a refusal to consider an appeal otherwise properly presented on the merits.

The plaintiff and her husband, at the time of the trial, had been married eighteen years. There was one child, a daughter aged four. They came to California from their former home in 1915. The plaintiff was a woman of considerable means with which she purchased property in southern California, including the two properties in suit, and, confiding in the rectitude of her husband, she caused the

deeds to be taken in his name. Some time in 1916 they be-
came acquainted with the appellant and shortly thereafter
a meretricious relationship arose between the husband and
Monnie Blackburn. In the latter part of January, 1917,
because of this condition of affairs, the plaintiff sued her
husband to recover her separate property. Upon the
promise that he would sever his relationship with the appel-
lant and comport himself as he should as the husband of
the plaintiff and the father of their child, he induced his
wife to dismiss the suit, and to evidence his good faith he
deeded to her all her property. Shortly thereafter he rep-
resented to her that he had severed his connection with the
appellant, and promising her that he would have no more
to do with the appellant, he importuned the plaintiff to
place in his name some of her property, stating that he
thought he was entitled to something and did not want to
feel like a beggar. · Relying upon his representations, which
the plaintiff alleged were made without any intention on his
part to fulfill them, she reconveyed to him the two parcels in-
volved in this suit. The meretricious relationship between
himself and Monnie Blackburn was either continued or im-
mediately resumed. [3] Regardless of the admission of
the husband of the allegations of fraud made by his wife,
the least overreaching or misrepresentation by a husband
through which he gains the property of his wife is a viola-
tion of the highly confidential relationship which it is the
policy of the law to uphold, and is, therefore, fraudulent.
(Civ. Code, secs. 2217, 2219; *White* v. *Warren,* 120 Cal. 327,
[49 Pac. 129, 52 Pac. 723]; *Jones* v. *Jones,* 140 Cal. 587,
[74 Pac. 143].)

[4] In April, 1917, the plaintiff again sued her husband
for the recovery of the two properties, the complaint
being based on a charge of his fraudulent misrepresenta-
tions. Again he represented that he had entirely given up
Monnie Blackburn, and promised that if his wife would
let the two properties remain in his name, he would have
nothing more to do with the appellant, but would conduct
himself as a husband and father should. Although she was
advised by her attorney not to dismiss the action, because,
as she said, she then "loved him and still loved him," she
caused the suit to be dismissed and a few days later at
his request she executed a quitclaim deed covering the same

two parcels of land to him. Prior to this time they had discussed the improvement of these two properties. It was understood between them that the property should be mortgaged for that purpose. He represented that he could not secure the mortgage without her joining, and, no doubt, for the same reason that operated upon her to convey the two properties to her husband, she executed to him a quitclaim deed. He was thereupon enabled to mortgage the two properties for the purpose they had agreed upon, and the improvements were made. There is no question presented as to the rights of the mortgagees. As between husband and wife the same confidential relationship existed, and his admission of all the facts alleged by the plaintiff carries with it the admission that every act done by him pursuant to the scheme of fraud was tainted by the original fraud. On behalf of the appellant, it is claimed that the quitclaim constituted a ratification on the part of the wife because it was made by her after her knowledge that the husband had not in fact performed his promise made at the time of the original deeds to sever his immoral and unlawful relationship with the appellant. If there is evidence to support the finding of the jury adopted by the court that the appellant was fully informed in regard to all the facts, she is bound by the same rule of law which binds the husband.

About November 1, 1917, the plaintiff sued her husband for divorce. In her complaint she described the properties standing in her own name and did not describe the properties involved in this action. It is claimed that this also amounted to a ratification of the deed fraudulently procured from her by her husband. As against a party to the fraud this was not a ratification, and while an argument is made in the appellant's opening brief on the ground of estoppel, counsel for the appellant abandoned that ground in their closing brief, and it need not be considered. During Christmas week of 1917, the plaintiff and her husband had a conversation in which she told him that if she thought he was going to lose the properties, she would step in and save them, presumably by buying the encumbrances, because he had promised that their child should have the property and that he would make a will in favor of the child. He then told her he would do everything he could to make the property a success and that their child was to get it. Almost

coincidentally with this conversation the two defendants went to Venice, near Los Angeles, and took up their residence in an apartment house, where the husband adopted an assumed name and the appellant passed as his wife. On January 4, 1918, they were arrested, and the husband was confined in the city jail in Venice. On January 7, 1918, while he was still in jail the husband executed a deed of the apartment house property to the appellant. The present suit was commenced on January 9, 1918, and *lis pendens* was filed. On January 10, 1918, the husband conveyed to the appellant the bungalow property. At the time of the transfer of the properties the apartment house was encumbered by a first mortgage of over $17,000, a second deed of trust of nearly $4,000, with interest and lienable claims for materials of about $1,100, and the bungalow property was encumbered by a first mortgage for $2,400 and other indebtedness of $240. The appellant claims that she had advanced the husband certain small sums of money, that she had actually paid to him ten dollars at the time of the transfer of the apartment house property, and as a further consideration she undertook to procure bail to have him released from the jail. It is practically conceded that she had actual, as well as constructive, notice of the claims of the plaintiff before the execution of the deed of the bungalow property, and the evidence is conflicting as to her knowledge of the various transactions which have been recited. It is claimed by the appellant that there is no evidence of her knowledge, but there is sufficient evidence of facts to warrant the deduction drawn by the jury and adopted by the trial court that the appellant was very fully informed in regard to the dealings between the plaintiff and her husband.

From the frank, if not bold, statement of facts contained in the appellant's brief, which for the most part furnishes the basis for the recitals made above, it clearly appears that the fraud of the husband was the cause of the original deeds being made to him. When he repeatedly importuned his wife to forego her legal remedies and made renewed promises, which he as repeatedly violated, it would amount to a judicial sanction of gross fraud on the part of the husband to hold that because his wife loved and trusted him more than he deserved to be trusted, she should be held to have ratified his wrong when in his final disregard of every

rule of honorable living he so publicly comported himself with the beneficiary of his fraud as to bring about the arrest of himself and his paramour and his own incarceration.

[5] It is contended on behalf of the appellant that the plaintiff did not offer to do equity in her complaint, and the court should at least have required the plaintiff to pay to the appellant the moneys which the appellant advanced to the plaintiff's husband. In other words, that a court of equity, determining on the admission of an unfaithful husband that he had defrauded his wife of her property and had transferred it to his partner in the entire wrong, should, as a condition for the return of her own property to the wife, compel her to adjust the money arrangements between those who had wronged her. This court knows of no rule of equity which requires any such adjudication.

Upon an examination of the entire record, this court is of the opinion that there was no reversible error committed by the trial court, and that there was sufficient evidence to support the judgment. There was no miscarriage of justice within the meaning of section 4½ of article VI of the constitution.

The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 1, 1920.

All the Justices concurred.