[Civ. No. 2191.   Fourth Appellate District.—December 9, 1938.]

RUTH SUTTON ROY, Respondent, v. CHARLES L. ROY, Appellant.

598

Swing & Swing for Appellant.

Duckworth & Harrison, Benjamin Harrison, R. E. Parsons and Earl C. Demoss for Respondent.

BARNARD, P. J.—This is an action for divorce on the ground of cruelty, a large number of specific incidents being set forth in the complaint. It was alleged that the parties

had acquired as community property various parcels of real estate and certain personal property, including stocks, bonds and securities. It was then alleged in paragraph V of the complaint that during the course of their married life and since 1929 the plaintiff had intrusted to the defendant money, stocks, bonds and securities worth approximately $50,000, which was the separate property of the plaintiff, which was still in possession of the defendant and for which he refused to account. The complaint further alleged that on September 10, 1934, the defendant by fraud and misrepresentation induced the plaintiff to sign and enter into an agreement, a copy of which is attached to the complaint, which purported to settle the property rights of the parties. The prayer was for a divorce, that the purported property settlement agreement be set aside, that plaintiff be awarded her just and lawful share of the community property, and that the defendant be required to account to the plaintiff for $50,000 worth of stocks, bonds and cash which she had intrusted to him.

An answer was filed and the trial, during which many continuances were had, extended over a period of many months. During the course of the trial the defendant filed an amended answer, setting forth the property settlement agreement above mentioned, alleging that it constituted an accord and satisfaction, that it extinguished all previous obligations between the parties, that the plaintiff was estopped thereby from asking for an accounting, and that the plaintiff was guilty of laches. At the conclusion of the trial the court made findings in favor of the plaintiff, finding that she was entitled to a divorce, that the property settlement agreement should be set aside, that each of the parties was possessed of certain property as their separate property, and, as the result of an accounting covering a period of some thirty years and running back to the marriage of the parties in 1906, finding that certain amounts were owed to the plaintiff by the defendant, and that he was entitled to certain credits. In the judgment which followed a divorce was granted, and the defendant was ordered to deliver to the plaintiff certain securities or in lieu thereof to pay to her the sum of $59,043.73. He was further ordered to pay to her the sum of $4,338.20, being the amount of dividends he had collected on these securities with interest, and to pay her the additional sum of $51,328.39 as the balance due upon

600

"the open account". From the judgment so entered this appeal was taken.

It is first contended that the evidence is not sufficient to establish grounds for a divorce and that the respondent's testimony in this regard was not sufficiently corroborated. The record and briefs are voluminous and it would serve no useful purpose to review the evidence in detail. It appears that the parties lived together harmoniously from 1906 to 1933 when the appellant became ill and went to a hospital. There he became acquainted with a young nurse and when he returned to a hotel in Redlands, which was owned by the parties hereto and in which they had been making their home for some years, be brought this nurse with him. In the three years which intervened between that time and the trial of this action he kept this nurse with him most of the time in spite of his wife's objections. While he insists vigorously that the condition of his health during that time required the services of this particular nurse there is an abundance of evidence which justifies the inference that his interest in her was not confined to her professional services and his need therefor. This branch of the evidence, which is amply corroborated, is entirely sufficient to support the findings and judgment in this regard. In addition, there is evidence that the appellant during this period was cold and indifferent toward the respondent, that he told her that he did not love her and repulsed her advances, that he ignored her and refused to talk to her, that he refused to eat with her, and that on one occasion he absented himself for two or three months without letting her know where he was. His wife went to Seattle, their former home, and started an action for separate maintenance. The appellant went there and, promising to get rid of the nurse and take his wife back, induced her to dismiss her action and to enter into the property settlement agreement. He then returned to Redlands saying he would get rid of the nurse and send for his wife. After four weeks, not having received an invitation to come, the respondent returned to Redlands where she found the nurse still occupying a portion of the appellant's quarters in the hotel. He then got his wife out of town long enough to enable the nurse to move out but thereafter continued his association with the nurse. There is evidence that after she returned to Redlands he called the respondent a "lying thief"

and a "snake", that on one occasion he threatened to shoot her, and that on another occasion he attempted to cause her physical injury. A part of this evidence was corroborated and while there is much conflicting evidence it cannot be held that the findings in question are not sufficiently supported.

It is next contended that the court erred in setting aside the property settlement agreement of September 10, 1934. That agreement purported to divide all of the assets in which both parties had an interest and also contained a provision that any property not mentioned therein which was in the possession of either party was the separate property of that party. The appellant contends that the allegations of the complaint in this regard were not sufficient to justify the setting aside of the contract and, further, that the evidence was not sufficient for that purpose. While the allegations of the complaint in this respect were probably insufficient, as was at one time held by the trial court, the appellant, as above noted, later filed an amendment to his answer in which he set up this contract as a defense against an accounting of any sort. This necessarily applied to and included the limited accounting based on paragraph V of the complaint, as well as the general accounting he had been forced to meet under the rulings of the court. Irrespective of any insufficiency in the complaint the amended answer placed the validity of the property settlement agreement in issue and under our practice the other side, without filing a further pleading, was entitled to attack it on the ground of mistake, undue influence or fraud (*Walsh* v. *Jacobson,* 3 Cal. App. (2d) 477 [39 Pac. (2d) 455]).

There was evidence that the appellant went to Seattle where his wife had filed an action for separate maintenance; that he induced his wife to dismiss that action and sign this contract by representing to her that he would get rid of the nurse and have nothing to do with her, that he was in love with his wife and wanted a reconciliation above all other things; that he hurried her into signing the contract which was prepared by his attorney; that he persuaded her not to submit the contract to her attorney before it was signed; and that he promised to bring her back to Redlands and continue their married life as it had been before the interruption. There is also evidence that he did not fully disclose to her the true situation with respect to the property

owned by each and that she was without knowledge thereof; that after securing the execution of the contract he returned to Redlands, but persuaded the respondent to remain in Seattle on various pretexts; that when she finally came to Redlands she found the nurse still occupying a portion of his quarters; that although the nurse then moved the appellant continued his association with her; and that in many respects the appellant failed to keep the promises by means of which he had induced his wife to sign the agreement. Without reciting the evidence in detail we are convinced that it is sufficient to support that part of the judgment which annulled and set aside this agreement (*Patterson* v. *Blackburn*, 47 Cal. App. 362 [190 Pac. 483]; *Estate of Cover*, 188 Cal. 133 [204 Pac. 583]; *Brison* v. *Brison*, 90 Cal. 323 [27 Pac. 186]).

The appellant contends that the court erred in going into a general accounting as between the parties running back to their marriage in 1906, both because a general accounting as to separate property of the spouses cannot be had in an action for divorce and because the complaint here did not state a cause of action justifying a general accounting. It appears that at the time of the marriage the appellant possessed some $150,000 worth of property and the respondent had property of the value of about $40,000. Subsequently the respondent inherited more than $100,000 worth of property. Throughout their married life the parties kept their property separate and no community property was acquired. In a few instances they bought property together, the interest of each being kept separate. The appellant made many investments for his wife with her money and kept an account of such transactions.

The complaint alleged that all property therein mentioned was community property with the exception of paragraph V, which alleged that since 1929 approximately $50,000 in money, stocks, bonds and securities belonging to the wife had been intrusted to the husband, for which he refused to account. A general demurrer was filed and, later, an answer. At the trial evidence was received relating to a general accounting. After the trial had proceeded three or four days counsel for the respondent admitted that there was no community property belonging to the parties and that they did not seek alimony of any kind. Thereupon counsel for the appellant

moved to strike out paragraph V of the complaint and all evidence relating to an accounting and strenuously objected to any accounting on the grounds that an accounting as to separate properties could not be had in such an action and that, in any event, the complaint was insufficient for that purpose. The motions were denied and the objections overruled, and an adjournment was taken to enable the parties to obtain reports from auditors. Later a motion made by the respondent for permission to amend her complaint was granted over objection of the appellant, but when the amendment was offered an objection thereto was sustained and it was never filed. The appellant, however, amended his answer by setting up the property settlement agreement. Over the constant objection of the appellant the court proceeded with a hearing on a general accounting and incorporated the results thereof in its findings and judgment.

The jurisdiction of the court with respect to the disposal of property in a divorce action is found in section 137 et seq. of the Civil Code. As a general rule, and subject to certain exceptions not material here, the power of the court is limited to a disposition of the community property and the court is without power to pass upon a dispute as to separate property or the disposition of the same (*Allen* v. *Allen,* 159 Cal. 197 [113 Pac. 160]; *Reid* v. *Reid,* 112 Cal. 274 [44 Pac. 564]; *Glass* v. *Glass,* 4 Cal. App. 604 [88 Pac. 734]; *Callnon* v. *Callnon,* 7 Cal. App. (2d) 676 [46 Pac. (2d) 988]). Another exception to the general rules arises where an issue is made by the pleadings as to separate property and both parties, without objection, have submitted the question to the court, in which case it has been held that under its general jurisdiction the court has power to hear the questions raised as to the ownership of separate properties and to make proper disposition thereof (*Glass* v. *Glass, supra; Carr* v. *Carr Co.,* 39 Cal. App. 53 [177 Pac. 856]; *Marshall* v. *Marshall,* 138 Cal. App. 706 [33 Pac. (2d) 416]).

In applying these rules to the instant case it must be remembered that under the original complaint it was alleged that most of the property was community property, which was denied in the answer, and it then appeared that a general accounting was not only proper but necessary. The appellant was forced to meet that issue during the first days of the trial and the fact that he did so was not a waiver

of his right to object to a general accounting when the issue was changed. ▆ When that occurred and it was admitted that there was no community property and no question of alimony rights he promptly objected to any accounting and, in particular, to a general accounting. His objections were overruled then and frequently thereafter, and he was compelled to go into a general accounting running back to 1906. In so far as a general accounting is concerned that was error, both under general rules and because the complaint did not state a cause of action for such a general accounting and no such issue was presented by the pleadings. ▆ In this connection the respondent argues that by setting up the property settlement agreement in his amended answer the appellant submitted the issue as to whether that agreement was fair and just and thus opened the door for and consented to a general accounting. We think this does not follow. While, as we have held, the validity of this agreement was thus placed in issue and evidence could be and was received justifying its being annulled and set aside, that was the only issue thus raised and the result of setting that agreement aside was merely to place the parties in the same position as if the agreement had not been signed. The amendment was filed largely, if not entirely, because the appellant had been forced to meet the issue of a general accounting, and it cannot be held that he thereby consented to having that issue added to the limited accounting which was asked for in the complaint, or that he voluntarily submitted the issue of a general accounting about which nothing was said in the complaint.

▆ While the allegations of paragraph V of the complaint are subject to the criticism that they are not too clear in laying a foundation for the prayer for an accounting as to the items therein mentioned, they are sufficient, in the absence of a special demurrer, to show a distinct request for an accounting of money, stocks, bonds and securities worth approximately $50,000 which had since the year 1929 been intrusted by the respondent to the appellant. Both by his answer and his statements in court the appellant sought to meet this issue and under the above noted exception to the general rule it must be held that he consented to the submission of this limited accounting, beginning with the year 1929, to the court. While it is true that the allegations of

paragraph V seem to relate more especially to a certain group of securities which, as shown by the evidence, the respondent had placed in the hands of the appellant, this paragraph also alleges that since 1929 certain money had also been intrusted by the respondent to the appellant. It appears from the evidence that late in 1929 the appellant took $10,190 from money which the respondent had received from the sale of securities which she had inherited and placed this amount in his own bank account. He was unable to explain what he did with this money and his own auditor admitted that he should be charged with that amount. While the paragraph in question alleges that both the money and securities were of the approximate value of $50,000 and while the court found that at the time of the trial the securities alone were of the value of about $54,000, there is also evidence that at the time the complaint was filed these securities were worth much less than $50,000. Under all of the circumstances we think it must be held that the appellant consented and submitted to the jurisdiction of the court in so far as these two items, arising since 1929, are concerned.

It follows that the court correctly went into the accounting between these parties in so far as the appellant's handling of money and securities belonging to the respondent from and after the year 1929 is concerned, but erred in requiring such an accounting and passing on the same for the period prior to 1929.

In the judgment it was ordered that the appellant deliver to the respondent certain named securities or that, upon his failure so to do, the respondent should have judgment for the sum of $59,043.73 with interest, and that the respondent further have judgment for the sum of $4,338.20 with interest, being the amount of dividends, with interest, collected by the appellant on the above-mentioned stocks. These portions of the judgment are responsive to the issues presented by paragraph V of the complaint. However, the court found that the value of the securities thus ordered returned to respondent was $54,991.19 "as of October 15, 1936", which was just a week before the last day of the trial. That is in accord with the evidence. The judgment was not filed until November 8, 1937, and the amount named in that part of the judgment, to be entered in case the securities are not returned, is $59,043.73, which was arrived at by adding inter-

est on $54,991.19 at 7 per cent from October 15, 1936, to November 8, 1937. The allowance of such interest is not supported by pleading, evidence or finding, and the interest provided by law for judgments would not attach until judgment was entered. The amount of that alternative portion of the judgment should be reduced from $59,043.73 to $54,-991.19.

The judgment further orders that the respondent recover from the appellant the additional sum of $51,328.39 with interest, "being the balance due plaintiff with interest on the open account". In arriving at that figure the court included certain items amounting to $25,878.31 which were charged against the appellant for various matters between 1906 and 1923, and also included and charged the appellant with interest on these various sums in the total amount of $34,453.43 or a total charge for these items of $60,331.74. There was also included and the appellant charged with $8,592.04 as the respondent's one-half of the profit realized from operating the Redlands Hotel from and after the year 1924, although the evidence shows that this investment was made and all of this profit was received prior to 1929. These three items, amounting to $68,923.78 arose from the general accounting covering the period prior to 1929 and not being within the issues pleaded or voluntarily submitted were erroneously included in the judgment. On the other hand, and in that connection, the appellant was given a credit for paying a mortgage on the hotel property in 1926, one-half of which was owed by the respondent, which credit with the interest allowed amounted to $26,075. Deducting this credit from the improper charge against the appellant of $68,923.78 leaves $42,848.78 which was erroneously charged against the appellant because of the general accounting. That amount should be deducted from this portion of the judgment awarding the respondent $51,328.39, and that part of the judgment accordingly reduced to $8,479.61.

The judgment further decreed that certain described real property in the city of Seattle, which had formerly been occupied by the parties as a home, is the separate property of the respondent. It appears that each of the parties owned an undivided one-half interest in this property, that in the property settlement agreement the appellant conveyed his interest therein to the respondent, and that the respondent

later sold the property to a third party. Although the property settlement agreement was set aside the property cannot be returned and the only effect of this part of the judgment is to confirm the right of the respondent to pass title to the purchaser. Since the appellant was credited with one-half of the proceeds in accounting for the transactions after 1929, and since he claims no further interest in the property, that portion of the judgment need not be disturbed.

The judgment further ordered and decreed that each of the parties is the owner, as his or her separate property of an undivided one-half interest in a property situated in the state of Washington, known herein as the ''Woodland Farm'', and also in the hotel property in Redlands, together with the furniture and fixtures therein. While this portion of the judgment is not responsive to the original issues in the case it is proper since the court set aside the property settlement agreement under the terms of which the appellant conveyed his one-half interest in the first of these properties to the respondent and the respondent conveyed her half interest in the other property to the appellant. The court concluded, and properly so, that the respective interests in these properties which had been conveyed by the agreement which was set aside should be returned to the original owners, respectively. It should be noted in this connection, however, that while it is decreed that the respondent is the owner of an undivided one-half interest in and to the hotel property the question of whether she still owes her share of the mortgage which was paid off in 1926 and whether she has received her share of the profits therefrom since the year 1924, when the property was acquired, has been eliminated from this case and has not been determined herein.

That portion of the judgment awarding the respondent an alternative judgment of $59,043.73, in the event the named securities are not returned, is reduced from $59,043.73 to $54,991.19. That part of the judgment awarding the respondent $4,338.20 is affirmed. That part of the judgment awarding the respondent $51,328.39 is reduced to $8,479.61. As so modified the judgment is affirmed. Each party to pay his own costs on appeal.

Marks, J., and Griffin, J., concurred.