[Civ. Nos. 15444, 15445. First Dist., Div. Two. Dec. 17, 1953.]

LUCILLE GRIFFIN, Respondent, v. NORMAN B. GRIFFIN, Defendant and Appellant; A. DON DUNCAN, Intervener and Appellant.

*Assigned by Chairman of Judicial Council.

A. Don Duncan for Appellants.

Charles Reagh for Respondent.

NOURSE, P. J.—These are reciprocal divorce actions in which the husband appeals from the adverse judgment in the main action (15445) and from an order awarding the wife fees and costs to oppose his appeal (15444). The husband's attorney, A. Don Duncan, intervened in the main divorce action to protect his assigned one-third interest in a fund deposited in court in the name of the husband in another action but which the wife in this divorce action claimed to be her separate property. Intervener appeals from the judgment (15445) insofar as it is adverse to him and awards the fund as a whole to the wife. The main appeal (15445) is on an engrossed statement of oral proceedings and a clerk's transcript, the appeal 15444 on an engrossed statement only.

The parties were married in March, 1943. There are no children of this marriage. At the time of the trial in September, 1950, the husband was 62, the wife 50 years old. Before and at the time of this marriage the wife was a waitress and had been twice married. After the marriage the husband opened a cleaning business in San Francisco. The wife also worked there, according to her, "full time", according to the husband, "half time." He complains that she put money of the business in an account under the name she had used prior to her marriage and that her conduct with regard to a certain fireman was improper. He instituted a divorce action in 1944 but he dropped the action on her promise not to see the fireman any more. In 1944 she made a gift of $4,000 of his money to her daughter by a prior marriage. In 1945 a new divorce action was started by the husband on the wife's resuming relations with the fireman and again dismissed. In March, 1947, the husband again started a divorce action after having found his wife with the fireman. He made a property settlement agreement with her in which he gave her $10,500 in settlement of all community property, separate property and alimony claims, and she abandoned all claims to the business, book accounts and the Cadillac automobile to him, each otherwise to keep what they had or would earn in the

future. He paid the $10,500 and also $2,500 to her attorneys, and on April 3, 1947, he obtained an uncontested interlocutory decree on the ground of extreme cruelty. However, a few days thereafter he suffered a physical and nervous breakdown. He was in a hospital 10 days, and a little later went back to his former home and wife. She testified that there was then a formal reconciliation and that they agreed that each would keep as separate property what each had received under the property settlement, but that for the future the former community relation would be resumed (without such financial agreement the effect of a reconciliation would have been the same [*Mundt* v. *Connecticut Gen. Life Ins. Co.*, 35 Cal.App.2d 416, 418 [95 P.2d 966] ; 9 Cal.Jur. 827].) In April-May, 1947, the husband sold the Chestnut Street cleaning business to a certain Comperes for $37,500, of which $10,000 was paid down, the balance to be paid in monthly installments of $500 and secured by a chattel mortgage on the equipment of the business. He testified that he had to pay $3,750 commission and deficiencies in federal income tax for several years amounting to some $3,000 from the down payment. When he found early in 1948 that the Comperes had gone East and that some equipment was missing he filed a foreclosure suit on March 1, 1948, through Morris Lowenthal as his attorney. At the receiver's sale on August 9, 1948, he bid the property in for $4,600 from the indebtedness of the Comperes, but a certain Williamson, who had acquired an interest in the business from them, objected and demanded payment in cash. Mr. Lowenthal advised that although he thought the objections without merit, cash deposit might be required. According to the wife's testimony, she then furnished the $4,600 on the husband's and Mr. Lowenthal's assurance that it would be returned by the court to her in a short time. According to the husband's testimony he borrowed $5,000 for the purpose from a friend. On August 20th Judge Kaufman required the cash deposit. The receipt is in the name of the husband. On August 25, 1948, Mr. A. Don Duncan was substituted for Mr. Lowenthal. The wife testified that she provided $350 for his retainer. The sale was confirmed, the receiver getting $460 of the deposit. Motions to release the balance to Mr. Griffin were denied. Considering the foreclosure suit prematurely filed because there had been no default in payment until June 10, 1948, Mr. Duncan dismissed the action without prejudice on October 29, 1948. On November 23, 1948, Williamson filed an action to quiet

title to the fund. Both Mr. Griffin and Williamson tried repeatedly to have the money released on motion but without result. Griffin employed Mr. Duncan to defend against the Williamson quiet title suit and to cross-complain in it and assigned to him a 30 per cent interest in the fund. Griffin obtained a judgment for the payment of the fund on July 7, 1949.

In the meantime he had opened a new cleaning plant at 745 O'Farrell Street on leased premises, in which he put the equipment which he had bought. He borrowed for the installation $4,000, giving a chattel mortgage, and opened the business in January, 1949. The wife again worked in the business. There were difficulties repeatedly between them. Twice the husband called the police to put her out of the shop. The final separation came on June 27, 1949, when he found her going through the pockets of his coat.

After the judgment as to the deposit, Williamson made a motion for a new trial which was denied, and he later appealed. After the motion for a new trial had been denied, Mr. Griffin gave his wife a check for $4,100 postdated September 13, 1949, but when her attorneys offered him an assignment of the fund for signature he refused to sign. On September 8, 1949, the wife's divorce suit was filed and he stopped payment of the check. Mr. Duncan obtained a dismissal of the appeal from Williamson's attorneys, which, however, he did not file when he heard Mrs. Griffin claimed the fund as he wished first to get his fee out of the matter.

The wife's complaint alleged domicile in San Francisco, extreme cruelty in general terms, that there was community property including the O'Farrell Street business, that the husband had under his control the sum of $4,100 on deposit with the clerk of the San Francisco Superior Court, which sum is her separate property; that unless restrained the husband will do away with the community property and the deposit, with prayer for an interlocutory decree, all the community property, permanent and pendente lite support and maintenance, counsel fees and costs, a pendente lite injunction protecting the community property and the deposit of $4,100 and general relief. After an order to show cause and hearing at which the husband objected to the jurisdiction of the court as to separate property, a preliminary order restraining defendant from transferring community property and the deposit and awarding the wife temporary alimony costs and fees was granted. At the same time defendant

demurred to the complaint on the ground that a divorce action and an action as to separate property were improperly united, which demurrer was overruled.

The husband's answer denied cruelty, the existence of community property and that the deposit was the wife's separate property or that she had ever claimed it, and alleged that the cleaning establishment and the deposit were his separate property, that he had litigated it as such and assigned 30 per cent of it to his attorney and that the court in the divorce action had no jurisdiction to make any determination as to it, that plaintiff was able to support herself and that she had made a property settlement with him in which she released all community and separate property and alimony claims, which settlement was approved in an interlocutory decree granted him on the ground of the wife's extreme cruelty, which decree had become final, and that plaintiff was estopped from claiming anything contrary to that settlement. He cross-complained for a divorce on the ground of the wife's extreme cruelty alleged in general terms, for awarding of the cleaning business to him, reapproval of the property settlement of April 1, 1947, and that if the court should determine it had jurisdiction then to award 70 per cent of the fund to himself, 30 per cent to Duncan. The cross-complaint was amended to allege specific acts of cruelty of the wife.

In her answer to the amended cross-complaint the wife denied the allegations in general but admitted the property settlement and interlocutory decree and alleged reconciliation and resumption of her property rights for the future.

After permission of the court was obtained, A. Don Duncan filed his complaint in intervention, alleging the facts as to the deposit stated before, and several instances in which the wife had been present when intervener took steps in court to obtain the release of the deposit to the husband without objecting or making any claim to it herself, that therefore the wife was estopped to claim that the 30 per cent assigned to him was her property with prayer for a declaration that he was the owner of said 30 per cent interest. The wife denied said allegations.

The court found among other things the wife's residency requirement, extreme cruelty of the husband, the 1947 property settlement and interlocutory decree, reconciliation of the spouses and oral agreement cancelling the settlement for the future only, that the O'Farrell Street business is in part

separate property of the husband, in part community property, that the balance of the deposit, $4,140, was the separate property of the wife which she had deposited for the husband relying on his promise that he would cause the clerk of the court to release it to her immediately on termination of the action in which it was deposited, that the essential allegations of the husband's cross-complaint and the complaint in intervention are not true. The court granted the wife an interlocutory decree, awarded the O'Farrell Street business to the husband as his separate property, ordered him to pay to the wife for support and maintenance a total of $4,500 in monthly instalments of $150, and $500 for counsel fees in two monthly instalments of $250, and imposed a lien on the O'Farrell Street business to secure the payment of these amounts, awarded the deposit of $4,140 to the wife and ordered the clerk of the court and the treasurer to forthwith pay said amount to her.

Both the husband and intervener appeal.

In the hearing as to the fees and costs on appeal before Judge Wollenberg, the wife furnished only an affidavit in which she stated that she was without funds and that the husband was able to pay a reasonable amount. The husband in a counteraffidavit and in oral testimony gave many details about his allegedly bad financial situation and the fact that the wife not very long before had received $10,500 from him. Five hundred dollars counsel fees and $620 costs were awarded.

In a 180-page brief appellant urged the following points:

I. *Insufficient corroboration of the wife's residence allegations.*

There was evidence that Mrs. Griffin lived in San Francisco in the years 1947, 1948 and 1949. There was no evidence to the contrary. The allegations relating to her residence were not denied and no controversy of that fact was raised during the trial. ■ There is a well settled presumption that a residence once established is presumed to exist until another residence is acquired. (See *Sheehan* v. *Scott*, 145 Cal. 684 [79 P. 350].)

II. *Insufficiency of those acts of cruelty testified to by the wife and corroborated to justify a divorce.*

■ Under the general allegation of cruelty the wife testified among other things, that defendant had a violent temper, that he repeatedly called her "vile and abusive" names in the presence of employees of the cleaning establishment, that

he many times pushed and hit her. The witness Inuzka, an employee of the establishment, testified that he heard defendant address "improper" language to Mrs. Griffin and that a few times he had to take hold of defendant to stop him from harming plaintiff. This shows a sufficiently corroborated violent and abusive conduct to support a finding of extreme cruelty.

III. *Relief to plaintiff was barred by recrimination* because the husband under his cross-complaint also established a cause of action for extreme cruelty. However, the court found that the allegations of the husband's cross-complaint were not true (except insofar as they are found to be true in the express findings, which do not decide the cruelty of the wife). Appellant contends that this finding is contrary to the evidence and cites his testimony and corroborating evidence as to five alleged instances of cruelty of which, however, four are prior to the reconciliation of April 18, 1947. This was simply a question of fact based on conflicting testimony.

IV, V, VI. These points, confusingly split up, will be treated together. The gist of the argument is that the court did not sufficiently take into consideration the fact that appellant obtained on April 3, 1947, an interlocutory decree because of the extreme cruelty of the wife which interlocutory decree has become final, and that thereafter according to the testimony of the wife, accepted by the court, there was a reconciliation. Because the wife had permitted the earlier interlocutory decree obtained by the husband to become final, she is said to be barred from relying in her present action on any cruelty of his prior to that decree and because the findings do not show that the divorce awarded the wife was based on facts later than the decree, it must be reversed. For this contention *Wolford* v. *Wolford*, 216 Cal. 117 [13 P.2d 665], is cited. However, in that case the earlier action followed by reconciliation as well as the final action were both by the wife and the husband pleaded against her second action that the allegations of cruelty were the same as those litigated in the first one. The reversal was because of lack of any finding as to said pleaded identity. Here there was no prior action by the wife, no special defense of the husband as to the allegation of cruelty. There was no objection by the husband to any testimony of the wife that could relate to facts antedating the interlocutory decree. He testified himself in rebuttal of all her contentions. There was no issue

as to the wife being barred from showing any cruelty prior to any date, and no findings in that respect were required. It seems doubtful whether the defense would have been good if pleaded, but at any rate it was not pleaded and cannot be raised on appeal for the first time.

▪ VIII. *The imposing of $4,500 alimony to be paid in instalments of $150 a month and $500 counsel fees to be paid in two equal instalments was an abuse of discretion.*

It is argued that the husband's testimony, books and documents showed that he had no capital of any importance outside of his business at 745 O'Farrell Street; that against this he owed more than $9,500; that his income in 1949 had been (according to his income tax return) approximately $1,000 and in the first quarter of 1950 $51.43, and further that the wife concededly in 1947 received $10,500 on the basis of the property settlement; that with $1,000 assistance of the husband she made from it a loan of $5,000 yielding 6 per cent interest; that she loaned $2,000 to a friend on her automobile and that she allegedly provided the money deposited with the county clerk still amounting to $4,140 which in the judgment appealed from is held to be her separate property, whereas she also had some real property of little value and some life insurance money.

However, there seems to be sufficient evidence to cause a conflict: The wife testified that when she was working in the O'Farrell Street business up to June 27, 1949, the business was clearing $200 per week above all expenses; and that Mr. Griffin habitually booked less than his true receipts. She received only $50 a month from her loans and those loans plus the deposit had exhausted her means. An injured left arm and menopause trouble prevented her from working. The court could also consider that the husband testified that for the deposit in court he had borrowed $5,000 from a friend, whereas the court believed and found, based on the evidence among others of the husband's former attorney, Morris Lowenthal, that the wife provided the money and the further fact that in 1947 he had to pay $3,000 for income tax delinquencies over prior years. Appellant cites contradictions in the wife's testimony indicating that she also is unreliable, but which of the unreliable parties should be believed was for the trier of facts.

▪ IX. *The court had no power to grant $500 counsel fees for past services.* Respondent answers that the complaint prayed for counsel fees and costs; that after order to show

cause and hearing, $125 *on account* of counsel fees and costs were granted on November 22, 1949, which order was not appealed and that therefore the determination as to the total amount could be postponed until the final judgment, citing *Brockmiller* v. *Brockmiller*, 57 Cal.App.2d 623, 626 [135 P.2d 184]. Though a stipulation for that purpose was made in the Brockmiller case we do not deem that of importance. Here the motion for counsel fees was made before the services were rendered. The wording of the order "$125 on account of counsel fees" clearly implies that the court refrained from passing on the motion finally until evidence of value was given.

 X. *The court had no power to make any present abso-lute disposition of property,* to wit, the cleaning business and the deposit in court. Respondent points out that the decision as to the cleaning business is favorable to the husband and cannot be appealed by him.

 XI. *The court had no power in the divorce proceed-ings to decide, over the objection of appellant, the ownership of the deposit which each of the parties claimed to be its separate property.* There is no doubt that appellant strenuously and repeatedly objected, stating the lack of jurisdiction. It is argued that only where questions as to separate property are put in issue by both parties without objection the divorce court can make decisions about them. (*Roy* v. *Roy*, 29 Cal. App.2d 596, 603 [85 P.2d 223]; *Marshall* v. *Marshall*, 138 Cal.App. 706, 709 [33 P.2d 416].) Respondent contends that the court had jurisdiction of the property status ancillary to the determination of the power to pay of the husband and need of the wife. No authority is cited and none can be found. That the wife could unite the property claim to the divorce action under section 427, subdivision 8, Code of Civil Procedure, as a claim arising out of the same transaction or transactions. No authority is cited and the argument is clearly unsound. That appellant failed to object by de-murrer to the jurisdiction. This is not supported by the record; furthermore, lack of jurisdiction is not waived by failure to demur (Code Civ. Proc., § 434) and can be raised at any time, even for the first time on appeal (3 Cal. Jur.2d 605). The question seems dubious. *Huber* v. *Huber*, 27 Cal.2d 784, 793 [167 P.2d 708], holds that the court cannot "assign the separate property of one of the spouses to the other" but may determine character and quiet title "when

the issue has been made." It leaves the matter of objection open.

The rule is fairly stated in *Citizens Nat. T. & S. Bank* v. *Hawkins,* 87 Cal.App.2d 535, 542 [197 P.2d 385], where the court, quoting from *Roy* v. *Roy,* 29 Cal.App.2d 596, 603 [85 P.2d 223], said: " 'The jurisdiction of the court with respect to the disposal of property in a divorce action is found in section 137 et seq. of the Civil Code. As a general rule, and subject to certain exceptions not material here, the power of the court is limited to a disposition of the community property and the court is without power to pass upon a dispute as to separate property or the disposition of the same [citations].' " (See *Fox* v. *Fox,* 18 Cal.2d 645, 646 [117 P.2d 325]; *Rose* v. *Rose,* 50 Cal.App.2d 432, 435 [123 P.2d 37].) There is a suggestion in some of the authorities that the court may assume such power if all parties agree. But the appellant by demurrer, motion to strike, and repeated objections to the evidence disclosed that there was no agreement.

XII. *It was error to overrule the husband's demurrer to the complaint on the ground of misjoinder of actions.* Respondent contends again that joinder is permitted under section 427, subdivision 8, Code of Civil Procedure. (See XI.) *Marshall* v. *Marshall, supra,* cites examples of dual actions as to divorce and separate property. But it seems that the complaint did not ask a final decision as to the deposit but only an injunction to dispose of it.

XVIII. *Intervener Duncan contends that it was error to find and hold against his 30 per cent interest in the deposit.* But as this issue must be retried it would serve no purpose to discuss the point here.

XX. *The award of $500 attorney's fees and an amount not to exceed $620 for costs of transcript to the wife to resist the appeal* were error because the husband's inability to pay was not controverted, the need which the wife asserted was shown not to exist and the $620 for transcript was granted although the court was informed that the appeal was being made on a settled statement and that respondent would be provided with a copy of the statement and the clerk's transcript, which was done. The award for counsel fees is not out of line with the accepted practice in cases of this kind, but the award of costs is clearly excessive. The respondent incurred no costs on the appeal except that of filing a typewritten brief of 18 pages.

The remainder of the 20 points raised do not require discussion.

The portion of the interlocutory decree determining the title to the cash deposit is reversed; in all other respects the decree is affirmed, the intervener to have his costs on appeal against the wife, and between husband and wife the costs on the main appeal to be apportioned in such a manner that the husband receive his costs as to the part of the appeal relating to the cash deposit, the wife her costs as to all other matters.

With respect to the order awarding counsel fees and costs on appeal, the award of $500 counsel fees on appeal is affirmed, and the award of $620 for costs on appeal is reversed with direction to allow respondent her actual costs on the main appeal as against the husband in the manner as stated above; the husband to have his costs on the appeal of this order.

Goodell, J., and Dooling, J., concurred.

A petition for a rehearing was denied January 15, 1954, and defendant and appellant's petition for a hearing by the Supreme Court was denied February 10, 1954. Schauer, J., was of the opinion that the petition should be granted.