COX v. MAILANDER et al. (No. 5463.) †

(Court of Civil Appeals of Texas. Austin. June 23, 1915.)

1. HUSBAND AND WIFE ⬤⇒278—POSTNUPTIAL AGREEMENT.

A postnuptial agreement between husband and wife, who have separated, will be upheld when fair and equitable.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 1046–1053; Dec. Dig. ⬤⇒278.]

2. HUSBAND AND WIFE ⬤⇒271 — SEPARATION AGREEMENT.

That a wife had knowledge of the character and amount of the community estate when partition was made between them by agreement on separation would not prevent the partition from being so unfair that it should not be enforced.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 989–1002; Dec. Dig. ⬤⇒271.]

3. HUSBAND AND WIFE ⬤⇒271—SEPARATION AGREEMENT — REVOCATION BY LIVING TOGETHER.

Though a partition of community property by agreement between husband and wife, made on separation, was fair, it would be vacated by their subsequent living together, there being no provision to the contrary in the partition or otherwise, and it was immaterial that after a reconciliation the husband, while using all the

property, kept an account, showing what had been allotted to the wife, and that the business owed her for the money so used.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 989–1002; Dec. Dig. &⸺ 271.]

4. HUSBAND AND WIFE &⸺271—SEPARATION AGREEMENT—VALIDITY.

Where a husband and wife, by agreement, partitioned community property on a separation, such agreement was set aside by subsequent reconciliation and living together, and on a subsequent separation and partition agreement he could not justify concealing from her the ownership of certain shares in a corporation by him on the theory that he had paid for such shares by the property allotted to him in the first partition agreement.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 989–1002; Dec. Dig. &⸺ 271.]

5. HUSBAND AND WIFE &⸺271 — PARTITION AND SEPARATION AGREEMENTS—FRAUD—ESTOPPEL.

Where a wife, after discovering fraud in a separation and partition agreement, continued to receive a monthly allowance under such agreement, she was not thereby estopped from questioning its validity; she being entitled to more dividends than she received during such time.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 989–1002; Dec. Dig. &⸺271.]

Appeal from District Court, McLennan County; Tom L. McCullough, Judge.

Action by E. M. Mailander and another against C. H. Cox. From a judgment for plaintiffs, defendant appeals. Affirmed.

Davis & Cocke, of Waco, for appellant. J. D. Williamson, of Waco, for appellees.

## Findings of Fact.

JENKINS, J. Appellee, after the institution of this suit was married to F. M. Mailander, who was made a party pro forma, but she will be hereinafter referred to as the appellee.

Appellant and appellee were married in January, 1895, and lived together until August, 1905, at which time they separated, intending such separation to be final; they, however, became reconciled in November, 1906, and again lived together until July, 1910, at which time they permanently separated. On June 11, 1911, she was granted a divorce. At the time of their separation in 1905 all of their property was community property, and consisted of a residence and a business house in Waco, a warehouse at Temple, and the goods, wares, merchandise, and fixtures of a produce business in the name of C. H. Cox & Co. On August 7, 1905, after their separation, they entered into a written agreement in reference to their property, whereby appellee received the residence property and furniture, her jewelry, and a horse and phaëton, of the value of $5,000, and was to receive from appellant $150 per month for life, or until she should marry. Appellant received the remainder of their property of the value of $50,000. Appellee

was to have the custody of and was to support their minor daughter, then about nine years old, and who was their only child. On December 1, 1905, the appellee expressing fears that appellant might cease to pay her the $150 per month, they entered into another written agreement, which declared that it was "in lieu of all other understandings verbal or written heretofore entered into between said parties." Under this agreement the real estate was to be deeded by them to trustees, who were to convey the residence property to the appellee in her separate right and the business property to appellant in his separate right, which was done, and appellant executed his note to appellee for $5,400, payable in 36 monthly installments of $150 each, which payments were to cease if appellee married again. Appellee retained the personal property which she received under the former agreement, and relinquished her claim to all of the property received by appellant under said agreement. Payment of the note was secured by a lien on the business property. Appellant made the monthly payments under each of these agreements until their reconciliation in 1906, and he also paid her attorney $500, as provided in said last agreement. At the time of their reconciliation appellee had either $165 or $265, which she turned over to appellant. During the time of their reconciliation the residence was sold for $4,800, which was also turned over to appellant and used by him in the business of C. H. Cox & Co. In July, 1909, the business of C. H. Cox & Co. was incorporated for $100,000, and paid-up stock was issued as follows:

| | |
|---|---:|
| To C. H. Cox | $67,900 00 |
| To E. M. Cox | 5,500 00 |
| To J. R. Davis | 3,000 00 |

These payments were made by transferring to the corporation the business property for $28,000, and the goods and fixtures of C. H. Cox & Co. for $58,500. There is nothing in the record to indicate that these were not fair values. J. R. Davis at this time owned an interest in the business of the firm of the value of $3,000. The par value of the stock was $100 per share. On June 15, 1910, after their second and final separation, another written contract was entered into between them, by which appellant agreed to deliver to appellee 100 shares of stock in the corporation of C. H. Cox & Co. when she obtained a divorce, to pay her $100 per month dividend on said stock as long as she held the same, to deliver to her all the household goods, and to pay $50 on her expenses in obtaining a divorce. Appellant paid the $100 per month until the agreement of June 9, 1911, was entered into. In March, 1911, appellee filed suit for divorce and for partition of their community property. On June 9, 1911, another written agreement was entered into by appellant and appellee, which contained the following recitation:

"Whereas said parties have agreed to settle perpetually all questions of property rights between them, which agreement is in lieu of all other understandings and agreements verbal or written heretofore entered into between said parties relating to earlier partial settlement of their interest, such contracts are hereby canceled."

In this contract appellant agreed to transfer to appellee 100 shares of stock in addition to the 100 shares which she was to receive under the agreement of June 15, 1910, and to guarantee a dividend thereon of $75 per month, payable monthly, as long as she held said stock, such guaranty to cease upon her marriage, and also to pay $150 on expenses of her divorce suit.. Appellee released her claim to all other property belonging to C. H. Cox or to C. H. Cox & Co., or to their community estate. In this settlement appellee was represented by Rhodes Baker, Esq., of Dallas, Tex., where appellee then lived. Appellant and his attorney represented to appellee and her attorney that 110 shares of said stock belonged to H. O. Tesson, 100 shares to R. W. Davis, and 10 shares to Leslie Finucane, that appellant owned only 470 shares of said stock, and that the indebtedness of the corporation was at least $10,000. Had this been true, in view of the fact that appellee retained her jewelry and furniture, the 200 shares which she received would have been a fair partition. But it was not true. Appellee brought this suit to set aside the partition of June 9, 1911, on the ground that the same was procured by fraud and was inequitable. Appellant replied that said partition was fair; that by virtue of former partitions the business house became the separate property of appellant; that 280 shares of the stock was paid for with said business lot; that each of the settlements had been acted upon and ratified by appellee. Appellee rejoined that the partitions of August and December, 1905, were unfair, that they were done away with by their reconciliation and living together, and that they were done away with by the agreement of June 9, 1911.

In reply to special issues submitted to them, the jury found:

(1) That on August 7, 1905, appellee had knowledge of the amount and character of the common property of herself and appellant.

(2) That the partition of that date was unfair.

(3) That the partition of December 1, 1905, was unfair.

(4) That the property of each was kept separate and distinct after their reconciliation and prior to their second separation.

(5) That the contract of June 15, 1910, was to take the place of all former agreements.

(6) That the contract of June 9, 1911, was not fair or equitable.

(7) That at the time the agreement of June 9, 1911, was made the appellant made false representations upon which appellee relied, and that a part of the property of the community estate was concealed from appellee

and not taken into account in said partition.

(8) That appellee received from appellant eight checks of $75, after she was informed that the 210 shares of stock in the name of Tesson and R. W. Davis belonged to appellant.

The evidence is sufficient to sustain these findings, and we adopt the same with this modification of No. 4: Appellant after the reconciliation kept his books so as to show that the property received by appellee remained her separate property, but appellee had no knowledge of this fact, and there was no agreement prior to their reconciliation that this should be done.

Other facts and issues necessary to an understanding of our views will be stated in the opinion herein.

The court found:

"That all agreements of partition between plaintiff and defendant should be set aside and considered of no force or effect."

## Opinion.

Appellant assigns error upon the finding of the jury that the partitions of August 7, 1905, and December 1, 1905, were unfair. The property received by appellant by the first agreement was worth $50,000, and the property received by appellee was worth $5,000, in addition to which she was to receive $150 per month during her life or until she married. It is important to calculate the then present value of this monthly allowance, in view of the fact that her future marriage was an uncertain event, and that she had no security for the payment of such amounts beyond the continued solvency of appellant. In the agreement of December 1, 1905, appellee was to receive, instead of $150 per month during her life or until her marriage, $5,400 in 36 monthly payments of $150 each, without interest, the same being secured by mortgage on the business property. This sum may be taken as being, in the estimation of the parties, the equivalent of the former agreement to pay $150 monthly. The then present value of the $5,400 note, payable in 36 monthly installments, without interest, allowing money to have been worth 6 per cent. per annum, was $4,954.13, from which it appears that the total amount received by appellee was less than one-fifth of the property, of which she was entitled to one-half, and, besides this, she had the burden of supporting their child.

[1] A postnuptial agreement between husband and wife, who have separated with the expectation of remaining permanently apart, will be upheld when the same is fair and equitable, but not otherwise. Proetzel v. Schroeder, 83 Tex. 687, 19 S. W. 292; Ximines v. Smith, 39 Tex. 52; Moor v. Moor, 24 Tex. Civ. App. 150, 57 S. W. 992.

[2] It is true the jury found that appellee had knowledge of the character and amount of the community estate at the time of first partition of the same. With such knowledge that she should consent to receive less than

one-fifth thereof would seem to indicate undue influence on the part of her husband in the transaction. She did not have the advice of an attorney, nor of any friend capable of giving advice in the transaction. At any rate, such knowledge does not prevent the partition from being so unfair that it should not be enforced by a court of equity. Appellant also knew the amount of the estate, and in good conscience he should have allowed her one-half of the same.

[3] Even had the partition been fair, it would have been vacated by their subsequent living together, there being no provision to the contrary in the partition agreement, and no such agreement having been made between the parties while they were living apart. James v. James, 81 Tex. 378, 16 S. W. 1087; Kehr v. Smith, 20 Wall. 31, 22 L. Ed. 314; Shelthar v. Gregory, 2 Wend. (N. Y.) 422; Hitner's Appeal, 54 Pa. 116; Wells v. Stout, 9 Cal. 479-498; Garland v. Garland, 50 Miss. 694; Schouler on Husband and Wife, § 478; Bright on Husband and Wife, vol. 11, pp. 319, 349.

The fact that appellant, after the reconciliation, while using in his mercantile business the proceeds of the property that had been allotted to appellee in the separation agreement, kept a book account, showing that the business owed her for the money so used, could not have the effect of continuing such money as her separate property, and thereby continuing that which had been deeded to him as his separate property. She was not aware that the account was so kept; but if she had agreed to such an arrangement while they were living together as husband and wife, it would not have been binding upon her. Cox v. Miller, 54 Tex. 26; Engleman v. Deal, 14 Tex. Civ. App. 3, 37 S. W. 653.

Even had the separation agreement of August 7, and December 1, 1905, been fair, and had the same not been set aside by their again living together, the subsequent agreement of June 15, 1910, both by its necessary effect and by its express stipulation, set aside all former agreements between the parties, and it, in turn, was in like manner set aside by the agreement of June 9, 1911. These agreements purported to deal with all the property owned by the parties, treated the same as community property, and undertook to make an equitable partition thereof.

[4] Appellant, while admitting that 210 shares of stock were represented by him in the negotiations leading up to the partition agreement of June 9, 1911, as belonging to Tesson and Davis, here insists that such misrepresentation was not in fact a fraud on appellee, for the reason that he was the owner in his separate right of 280 of such shares by reason of their having been paid for with the business property deeded to him in 1905. This is evidently an afterthought. He made no such contention at the time of entering into either the agreement of 1910 or of 1911. The agreement under which he obtained a deed to said property being unfair to appellee, and having been set aside by the reconciliation and subsequent living together of appellant and appellee, he held the legal title to said business lot in trust for the community estate, and its proceeds, when it was converted into corporation stock, became community property. In Rains v. Wheeler, 76 Tex. 390-395, 13 S. W. 324, and Caffey's Ex'rs v. Caffey, 12 Tex. Civ. App. 616, 35 S. W. 739, wherein it is held that deeds of partition, when a husband and wife have separated, constitute the property conveyed separate property, there was no claim that the partition was unfair, no subsequent reconciliation, and no subsequent contract between the parties.

[5] We do not think the facts raise the issue of estoppel. It is true appellee continued to receive $75 per month dividends after she discovered the fraud with reference to Tesson and Davis stock, but she was entitled to more dividends than she received during this time.

Finding no error of record, the judgment of the trial court is affirmed.

Affirmed.