[Civ. No. 14330.   Second Dist., Div. Two.   May 9, 1944.]

ESTELA RAMOS, Respondent, v. FERERICO PACHECO, Appellant.

Bruno Newman and Alexander L. Oster for Appellant.

Barry Sullivan for Respondent.

MOORE, P. J.— Respondent instituted this action to enforce the rescission of a written contract executed by herself and appellant on November 18, 1940. Judgment was entered in her favor on findings favorable to respondent on all of the material issues. Appellant now attacks the judgment on the ground that the second count of the complaint is insufficient and that the findings are not supported.

On the 8th of March, 1934, while appellant was operating El Charo Grocery in the city of Los Angeles, and living with respondent as his wife he agreed by a writing with respondent that in consideration of her entire services to the grocery she should receive 20 per cent of the net profits and a salary of $10 per week. Pursuant to their contract appellant added the sum of $1,200 to his invested capital of $3,216.61 and both parties devoted their total time and energies to the development of the business. The partnership continued until December 1, 1940, when by reason of respondent's treatment by appellant she discontinued her appearances there. In the meantime other events transpired. By oral agreement

they soon abandoned their initial understanding. Thenceforth, no moneys should be withdrawn in excess of their living expenses and all profits should be invested in real property in joint tenancy or equal shares. Also they lived together in an apartment at the store as husband and wife, which illicit relationship is immaterial to the consideration of the issues here involved except insofar as it may have served as proof of the confidential relationship and of her fear of him, both of which were found to exist. Such intimacy continued until respondent moved to other quarters. Her child, Lillian Pacheco, was born in 1936.

From the profits earned by the partnership four parcels of improved realty were acquired, to wit, adjacent lots 1 and 4 on Whittier Boulevard; a third parcel on Matthew Street and a fourth on Beswick. After respondent had removed from the apartment at the grocery she was ill in mind and in body. She grieved on account of the treatment she suffered at the hands of appellant from 1935 until she established a new home. After she was advised by her physician to leave the grocery appellant falsely accused her of living with another man. His cruelties then became violent and so continued until June, 1940, when she was compelled to leave him. In the following November appellant employed an attorney to prepare three deeds whereby respondent should convey to appellant her one-half interest in the real properties. By reason of the years of intimate life together, the dominating influence which appellant had gained over respondent, and by reason of her fear of him, she became the easy prey to his demands when he undertook to induce her to execute the contract and the deeds which he had prepared. To achieve his purpose, he told her that she was his common law wife; that as such she had no standing in California; that she had no right to anything or to the property; that the signing of the contract which he presented would legitimatize Lillian; that she could not claim the real properties for the reason that the titles were vested in Estella Pacheco, who she was not; that it was a crime to hold property in an assumed name. Upon demand of appellant, respondent accompanied him and his counsel to a courtroom. After an inaudible conversation with the judge the attorney said, "Everything is all right." From such statement respondent understood the effect of the proposed contract was that Lillian

would become legitimate. By reason of her eagerness to legitimatize her child, and by reason of her fear of appellant and of his influence over her; and because of her illness, she executed the deeds conveying the Whittier Boulevard and the Matthew Street properties to appellant. The contract which they signed provided for the conveyance to her of the Beswick property, and for the payment to respondent of monthly sums for the child's support, although it omitted reference to her custody. During the two following years by reason of his threats to take Lillian away from respondent the unfortunate woman was kept in constant fear and dread of Pacheco.

It was not until September, 1942, that respondent consulted an attorney from whom she learned the utter falsity of the statements of appellant. He advised her that neither the contract she had signed, nor her appearance in the courtroom of the judge, legitimatized her child. Thereupon she served an appropriate notice of rescission, offered to restore and demanded that appellant reconvey to her the interest which she had transferred to him in November, 1940.

Upon appellant's refusal to rescind, this action was filed. Pursuant to proof made and facts found, the court determined that a partnership and a confidential relationship of the parties existed; that by reason of his acts and statements and because of sickness and grief suffered by respondent, appellant had defrauded her; that all the deeds executed by the parties in November, 1940, should be cancelled; that an accounting between the parties should be made by restoring to respondent her half interest in all the properties, her share of all profits of the grocery and her portion of all revenues of the real properties jointly owned. Accordingly the deeds were annulled and an accounting was determined which left appellant still indebted to respondent in the sum of $3,351. Judgment was entered accordingly.

It is contended that the court erred in overruling the general demurrer to the second cause of action which sounds in fraud. It is argued that since it contains no allegations fairly excusing the two years' delay in commencing suit after the alleged fraud, it is fatally insufficient. The facts alleged sufficiently excuse the delay: (1) she was a sick woman, under the doctor's care, suffering a nervous shock; (2) she con-

tinuously feared appellant would take her child from her; (3) she still believed the representations of appellant.

But for another reason such contention cannot prevail. The case was tried upon the theory that appropriate allegations were before the court excusing respondent's delay. At the trial, defendant conceded there was no issue on the question of laches. Where a case proceeds upon the hypothesis that an issue has been raised and findings are made upon such issue, the complaint becomes immaterial and judgment on the findings will be upheld. (*Boro* v. *Ruzich,* 58 Cal.App.2d 535, 540 [137 P.2d 51]; *Sanders* v. *Magill,* 9 Cal.2d 145, 153 [70 P.2d 159].) A finding is not to be overthrown merely because it is more specific than the allegation.

The evidence abundantly supports the finding that the delay of respondent in seeking rescission was justified by reason of the conditions found to exist. (12 Cal.Jur. p. 799; *Bennett* v. *Lane Mortgage Co.,* 19 Cal.App.2d 515 [65 P.2d 953]; *Edward Barron Estate Co.* v. *Woodruff Co.,* 163 Cal. 561 [126 P. 351, 42 L.R.A.N.S. 125]; *Lataillade* v. *Orena,* 91 Cal. 565 [27 P. 924, 25 Am.St.Rep. 219].) The authorities cited by appellant (*Clanton* v. *Clanton,* 52 Cal.App.2d 550 [126 P.2d 639]; *Campbell* v. *Title Guar. etc. Co.,* 121 Cal. App. 374 [9 P.2d 264]) are not in point for the reason that each involved a situation where a long delay occurred after discovery of the fraud, no satisfactory excuse for delay was pleaded or proved, and there was no confidential relationship between the parties during the season of delay. In the Clanton case "not even the slightest effort was made to excuse delay." In Mrs. Campbell's case she was entitled to rescission in no event. She made no attempt to rescind for nine months after discovery of the fraud, during which she continued in default on her contract of purchase.

The insufficiency of the complaint is grounded upon the further contention that the alleged misrepresentations concerned matters of law and are therefore not actionable. The answer to that claim is threefold. (1) The legal opinions with reference to the November contract do not comprise the only misrepresentations or the only alleged grounds for equitable relief. (2) The act of appellant in having an inexperienced, credulous woman accompany him and his attorney to a courtroom where they pretended to gain the approval by the judge of their proposed method of legitimatizing her child was a

misrepresentation of fact. (3) Respondent had no previous, independent legal advice. In addition to the foregoing it is alleged: (a) that appellant paid nothing for the contract or the conveyances; (b) that at the time of executing the instruments respondent was sick in body and in mind and grieved because of the cruel treatment inflicted upon her in requiring her to work fourteen hours a day; (c) that she was under the doctor's care and suffering from a nervous shock to such extent that she became hysterical at night.

Where a confidential relationship exists between two parties, misrepresentations of law may constitute such a fraud as to avoid contracts made by them and particularly where the oppressor ''has had superior means of information and thereby gains an unconscionable advantage of his victim who has not been in a situation to become informed.'' (*White* v. *Harrigan*, (77 Okla. 123 [186 P. 224, 9 A.L.R. 1041] 17 C.J.S. p. 511.) Especially is this so where the defrauded party is weakened by sickness and grief at the time advantage of her is taken.

It is contended that the finding of the creation of a partnership by the agreement of 1934 is not supported by the evidence. That instrument definitely provided for a portion of the net profits to go to respondent in addition to her salary. The subsequent substitution of the arrangement for neither to draw moneys from the business except to the extent of their common living expenses and for all profits to be invested in real property to be held in joint tenancy indicated an even more definite purpose to establish a partnership. This modification was followed by the actual investment of the profits from the business in the four parcels of realty with the title of each in joint tenancy. Moreover, the testimony of respondent was that while she drew no money she lived with appellant who paid all of her expenses. Their living together, their working together for long hours daily, and their joint investment of all savings in properties in equal ownership supply sufficient proof of a partnership without the necessity of using that word in their agreements. It is unnecessary that the word ''partnership'' appear in a contract drawn for the purpose of creating that status. It is the transactions consummated that establish the relationship. (*Doan* v. *Dyer*, 286 F. 339.) Not even a knowledge of the legal effect of their acts on the part of the partners themselves is essential to the creation of a partnership. (*Wescott*

v. *Gilman,* 170 Cal. 562 [150 P. 777, Ann.Cas. 1916E 437].) That it was intended for respondent to have a 50 per cent interest in the partnership is evidenced by the facts that they lived and cohabited together, that they worked together at the same tasks, and that they so invested their moneys as to evidence an intention to share equally in the profits of the enterprise. (Civ. Code, § 683.)

The contention that by reason of respondent's fear of Pacheco the confidential relationship ceased to exist is to ignore facts found and principles established. While she believed his representations, even more she feared the consequences of his threats. The mere wish of respondent to be freed from her anxieties and fears did not erase appellant's obligation to deal with her in the highest good faith. This he was obliged to do by reason of the partnership relation. (*San Francisco Iron & Metal Co.* v. *American Milling Industrial Co.,* 115 Cal.App. 238, 248 [1 P.2d 1008].)

The next assignment is that the finding that appellant employed attorney Watson and gained his advice is not supported by the facts. Appellant testified that he took the deeds to the attorney and on the same day told respondent at her home that he had consulted counsel and that it was time to come to an agreement with respect to their properties; that he later accompanied her to the attorney's office, read and signed the contract which had already been prepared. Not only did appellant gain the advantage of a knowledge of the law as applied to his own situation, but in addition thereto he learned of the advantages to accrue to himself (1) by representing to respondent what the law is not; (2) by having the aid and presence of the attorney in inspiring a belief in the truth of his representations; and (3) by obtaining respondent's signature to the writings. The execution of a contract without independent advice by a woman in favor of a person in her confidence whereby she confers a gift of value upon such person is presumptively fraudulent and is therefore voidable at her instance. (*Piercy* v. *Piercy,* 18 Cal.App. 751 [124 P. 561].)

Appellant's contention that the findings of his several acts and his misrepresentations to respondent are not supported by the evidence is to fly in the face of the accepted testimony of respondent. It is equally well established that his representations were the immediate motivating force which caused

respondent to execute the instruments. Each statement he made was false. A single fraudulent misrepresentation is sufficient to void the execution of a contract. (Code Civ. Proc., § 1572, subd. 4; *Graham* v. *Smither,* 53 Cal.App.2d 701 [127 P.2d 1024].) Withal, his misrepresentations were not the only sinister influence he practiced to achieve his aim. His act of conducting respondent and his own counsel to a courtroom in order to gain the ostensible approval by the judge of the promised effect of the contract was reprehensible. Not only did respondent fear harm to herself at his hands and a possible prosecution for holding property under an assumed name, but she knew of no means by which to legitimatize her daughter other than by the course appellant had contrived. Such threats constituted a duress, actionable without previous formal rescission. (*Millsap* v. *National Funding Corporation of California,* 57 Cal.App.2d 772, 781 [135 P.2d 407].)

Finally, the contention that respondent ratified the contract by mortgaging the Beswick Street property in July, 1942, is without support. Whether a ratification takes place as the result of dealing with the property acquired by means of a fraud must be determined in each case from its own facts. The circumstances in proof do not warrant the conclusion that respondent ratified her agreement of 1940 by her act in mortgaging the Beswick Street place in 1942. She was the owner of one-half interest in the four real properties valued at $17,283 in October, 1940. By the contract appellant took three, valued at $12,240. In addition to these properties, prior to the trial, he collected profits from the grocery in the sum of $5,910. Also, he had collected revenues from the three properties in the sum of $3,175. Thus he had the grocery and $18,150 he had garnered from the partnership business while respondent had nothing but the Beswick Street home valued at $5,000. In view of the partnership, appellant was at all times indebted to respondent in a sum far in excess of one-half of the $2,000 she had received from her mortgage. Therefore no detriment could possibly have resulted to appellant by judicial adjustment of the accounts without requiring respondent to pay one-half of the balance due on her mortgage or to restore the Beswick property clear of debt to joint ownership. (*Gatje* v. *Armstrong,* 145 Cal. 370, 374 [78 P. 872].) As the author of the fraud equity invested him with the character of a trustee. He held one-

half interest in all the properties in trust for respondent. Whatever share he had in the $2,000 was offset against the greater sums he owed her. (*Gatje* v. *Armstrong, supra.*) That offset was included in the computation of the court in deriving the sum of $3,351 as the balance due respondent after cancelling all of the conveyances. Its duty was to do complete justice by adjusting the accounts between the parties.

Judgment affirmed.

McComb, J., and Wood, J., concurred in the judgment.