[Civ. No. 3409.  Fourth Dist.  Jan. 30, 1946.]

ELOGE AUCLAIR, Appellant, v. MARIE AUCLAIR, Respondent.

[Civ. No. 3410.  Fourth Dist.  Jan. 30, 1946.]

JOSEPHINE R. DRISCOLL, Appellant, v. MARIE AUCLAIR, Respondent.

E. John Eriksson and Homer M. Bail for Appellants.

Fred A. Wilson for Respondent.

GRIFFIN, J.—On May 27, 1943, Eloge Auclair, plaintiff and appellant, brought an action (No. 3409) for divorce against his wife, Marie Auclair, defendant and respondent, in which he alleged that there was no community property. In an amended cross-complaint filed by the wife, she sought a divorce and alleged that the parties were the owners of certain community property described as parcel No. 1 (the Burton Place), consisting of 2½ acres, which constituted the home place of the parties, and parcel No. 2 (the mining property), which was a leasehold in 80 acres of school land. By the same action the wife sought to set aside an alleged property settlement agreement and a quitclaim deed to her husband of parcel No. 1, claimed to have been obtained through fraud practiced upon her by her said husband. On March 25, 1944, one Josephine R. Driscoll, plaintiff and appellant, brought a quiet title action (No. 3410) against the wife, Marie Auclair, defendant and respondent. This action affected parcel No. 1, above mentioned. Mrs. Auclair alleged in her answer (Case No. 3410) that on October 12, 1943, during the divorce action, her husband executed a quitclaim deed of those premises to plaintiff, Mrs. Driscoll, without any consideration, and with knowledge on the part of the plaintiff that the real property was community property and that the deed thereto was accepted by plaintiff for the purpose of defrauding defendant of her rights in said real property.

Relation of a part of the factual background leading up to the execution of the documents herein involved is essential. Mr. and Mrs. Auclair, shortly after their marriage, went to Twenty-nine Palms to live. They ran a cafe and lived on the Burton Place (parcel No. 1). Mrs. Driscoll, a married woman, denominated Mr. Auclair's paramour, came out to stay at their place for a short time. Soon thereafter, she returned to her home in Los Angeles and, as reflected in numerous letters written by her to Mr. Auclair, thereafter she pursued a course of conduct endeavoring to entice Mr. Auclair away from his wife. They met, on many occasions, at a place away from their

respective homes. The letters revealed that the relationship between them was of the closest character. It was apparent therefrom that they planned a subsequent marriage after arranging some property settlement and after divorces were obtained from their respective husband and wife. Mr. Auclair, according to Mrs. Auclair's testimony, never mentioned to her any suggestion of divorce or separation, but in order to get title to the Burton property and the mining claim, falsely represented to her that the purpose of the property settlement agreement and quitclaim deed was to so segregate their property that his mine and the Burton Place would not be held liable for any judgment that might be obtained against her for any liability created as the result of the operation of the cafe, and vice versa; that she did not have independent legal advice as to the legal effect of the documents involved; that they were living together at the time and that they continued to do so for 17 days after the execution of the document, at which time he stated that he was leaving for the city on business; that he kissed her good-bye; that she expected him to return, but instead he had divorce papers prepared and came back and drove her from the premises. The record indicates that one of the gravest errors Mr. Auclair made was to bury the solicitous letters he received from Mrs. Driscoll in a near-by sand pile, which letters were subsequently found by Mrs. Auclair and with which both of them were confronted at the trial of the present actions.

The trial court granted Mrs. Auclair a divorce and awarded to her the two parcels of property above mentioned, together with the household furnishings, and invalidated the property settlement agreement as well as the deed from her to her husband. The husband appealed from that judgment.

In the Driscoll action (No. 3410) the court found in all respects in favor of defendant Mrs. Auclair, and that Mrs. Driscoll had no interest in the property involved. By stipulation, the two cases were jointly tried and consolidated and are thus presented on appeal. Although Mr. Auclair appealed from the entire judgment, he now concedes, on appeal, that there is ample evidence in the record supporting the portion of the judgment awarding the decree of divorce to his wife, but argues that the findings are unsupported by the evidence in the following particulars: (1) That there is no evidence showing that parcel No. 2 was community property; that in

fact it was his separate property and that therefore the order awarding his separate property to her was invalid; (2) That his wife never restored nor offered to restore to him the rights. or interests which he conveyed to her under the property settlement agreement, namely, the cafe or the proceeds from the sale thereof; (3) That the evidence is not sufficient to support the order rescinding the agreement and deed; and (4) That the order setting aside the personal property to Mrs. Auclair was erroneous.

As to the first point, Mr. Auclair admits that parcel No. 1 and the cafe (subsequently sold by Mrs. Auclair) was community property. The parties were married on July 1, 1940. The cross-complaint alleges that all of the above mentioned property is community property. The answer thereto denies such allegations. The trial court found all of the property, including the furniture, to be community property, including the mining property (parcel No. 2), acquired by Mr. Auclair prior to their marriage. It is argued that there is no testimony whatsoever in the record as to the character of the leasehold interest described in parcel No. 2 (Golden Bear Mine) and that since it is recited in the property settlement agreement dated May 8, 1943, that the permit from the State Land Commissioner to prospect for minerals upon such land was dated July 27, 1939, over six months prior to their marriage, the finding that the permit and leasehold interest is community property is erroneous, citing *Reid* v. *Reid,* 112 Cal. 274 [44 P. 564]. By the purported property settlement agreement Mrs. Auclair released to Mr. Auclair all of her right, title and interest therein. It further recites: ". . . that the parties are husband and wife and are desirous of settling . . . all their property rights . . . and all liabilities of one to the other." The party of the first part (Eloge Auclair) released all of his interest in the leasehold on a certain described cafe business at Twenty-nine Palms, together with all fixtures and personal property therein, to party of the second part (Mrs. Auclair). She in turn released to him any interest she might have in the home place (Burton Place) described as Parcel No. 1, and in the permit from the Land Commissioner to prospect for minerals (parcel No. 2, Golden Bear Mine) dated December 27, 1939. The property settlement agreement further provided that Mr. Auclair was released from all obligation to support or maintain Mrs. Auclair at any future period, or for the payment of any court costs, attorneys' fees or any

expenses in any action which might be filed by either of the parties affecting their marital rights, and each party waived any interest in property acquired in the future by the other party. On the same day Mrs. Auclair executed a quitclaim deed of parcel No. 1 to Mr. Auclair.

In disposing of the issues presented, we should first relate the contents of the pleadings filed by the several parties. It will be remembered that Mr. Auclair's complaint merely seeks a divorce and alleges that there was no community property. The answer merely denies these allegations and by the amended cross-complaint Mrs. Auclair seeks a divorce and specifically alleges that the parties are the owners of "the following community property, to wit:" Parcel No. 1 (home place, the Burton Place), and parcel No. 2 (the mining lease-hold interest), describing each by metes and bounds. No mention is made of household furniture, money in bank, or leasehold interest in the cafe, which was given to Mrs. Auclair under the property settlement agreement. The only relief sought by the amended cross-complaint is to set aside the quitclaim deed of the Burton Place (parcel No. 1) and the property settlement agreement executed by the parties, and then it is alleged that those two instruments were obtained by fraud and undue influence on the part of Mr. Auclair. The prayer is that Mrs. Auclair be awarded the "community property aforesaid" annulling the two "documents aforesaid" and for general relief. The answer to the cross-complaint merely denies those allegations. The property settlement agreement specifically describes parcel No. 2 (the mining lease) and shows on its face that the permit was acquired before the marriage of the parties.

Section 163 of the Civil Code provides that "All property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property." There is no evidence of any substantial character that parcel No. 2 (mining property) was or ever became the community property of the parties and therefore subject to an order assigning that property to Mrs. Auclair in a decree disposing of the community property. In this respect counsel for Mrs. Auclair argues that there is no evidence that that property was community property but that during the trial the "court as well as the wife was led to believe that plaintiff so conceded";

that the case was tried upon that theory and that it is now too late to raise that question, citing *Cullinan* v. *Mercantile Trust Co.*, 80 Cal.App. 377 [252 P. 647], which recites that: "Where a cause is so conducted that the court and counsel may rightly and do infer that certain facts are conceded or admitted the court may so treat them." We have examined the entire record and are unable to agree with counsel's version of the evidence and facts presented by the pleadings. The pleadings clearly place this question in issue and the property settlement agreement which the court set aside clearly shows that the permit in dispute was acquired before marriage. ▐ Mrs. Auclair, in her testimony, referred to the mines as her husband's property and said she figured if she should get into financial trouble in connection with the cafe business, her creditors might "come onto his property" to satisfy their claims. This was in reply to the following question propounded to her on cross-examination by counsel for plaintiff: "Q. It was your intention for your husband to have the Burton property, you have the cafe, and your husband to have the property he owned, or mining property, before he married you. Isn't that right? A. No, sir, it wasn't. . . . The only thing I was signing was signing a paper and what I was doing was, that if I got in trouble, which I might have with the business. . . . I figured well, after all, he has got his mine out here, and working to get the money we could to get us straightened up, and if I should get in trouble they can, or they could, come onto his property." From this evidence it is clear that Mr. Auclair did claim the mining property to be his separate property throughout the trial. There is no evidence that there was a transmutation of the separate property into community property by the parties hereto. Therefore, the finding that parcel No. 2 was community property is not supported by the evidence and the trial court is without power to award, in a divorce action, the separate property of the husband to the wife. (*Roy* v. *Roy*, 29 Cal.App.2d 596, 603 [85 P.2d 223].)

The evidence shows that Mrs. Auclair, by the property settlement agreement, accepted title to the cafe, and Mr. Auclair accepted title to parcel No. 1 (the Burton Place). Both properties were admittedly community property. Mrs. Auclair subsequently, and prior to trial, sold the lease on the cafe and fixtures for approximately $951. It is now

argued by Mr. Auclair that before the rescission of the property settlement agreement and quitclaim deed may be effective, she must allege and prove restoration or an offer of restoration of everything of value she received under the agreement, citing *More* v. *Calkins,* 85 Cal. 177 [24 P. 729] ; *Clanton* v. *Clanton,* 52 Cal.App.2d 550 [126 P.2d 639]. This contention deserves careful consideration.

Respondent argues that since Mr. Auclair continued to reside with Mrs. Auclair for 17 days after the execution of the property settlement agreement, it was automatically invalidated, citing *Wells* v. *Stout,* 9 Cal. 479. The case involved a *separation agreement.* The property settlement agreement here involved does not mention the question of separation and that feature of it is not a condition thereof. This distinction was fully discussed in *Sanguinetti* v. *Sanguinetti,* 51 Cal.App. 347 [196 P. 799].

Section 1691 of the Civil Code imposes upon one who seeks to rescind, the duty to make or offer restoration of what he received under the contract. The cases cited by appellant hold that the fact that the contract is between a husband and wife does not take it out of the general rule. However, there are certain well-recognized exceptions to this general rule. In *Milekovich* v. *Quinn,* 40 Cal.App. 537 [181 P. 256], it was held that no offer to return the property received by the plaintiff under the agreement was necessary where she would have actually received the property deeded back, in addition to other property fraudulently concealed from her and not mentioned in the agreement.

In *Green* v. *Duvergey,* 146 Cal. 379, 389 [80 P. 234], it was said:

"It is not an invariable rule that the rescission of a contract obtained by fraud will be denied merely upon the ground that the parties cannot be placed in *statu quo.* If equity can still be done between the parties, courts will grant relief to the defrauded party." (Citing cases.)

In *Estate of McNutt,* 36 Cal.App.2d 542, 552 [98 P.2d 253], the court said:

"Since the plaintiff herein was entitled to receive 'a modest personal allowance' from her husband, who counted his annual income in the tens of thousands, it would have been inequitable to require the plaintiff to restore the sums which had supported her in her distress in order to maintain her action. (Citing cases.) No estoppel arises from the ac-

ceptance of benefits provided for by a contract, where the person accepting is entitled thereto, regardless of the transaction in question.''

In *Simmons* v. *Briggs,* 69 Cal.App. 447 [231 P. 604], it was held that where a contract between a plaintiff and her husband required the latter to pay certain street assessments, but it did not appear whether he paid the assessments or whether he was under legal obligation to pay the same prior to the execution of the agreement and an accounting was necessary to ascertain the amount, if any, to which the husband was entitled on account of such payment, an offer of restoration thereof was not required to make plaintiff's rescission effective.

In *Estate of Barrow,* 27 Cal.App.2d 402 [80 P.2d 1006], it was shown that the wife had used some of the money received under the property settlement agreement for living expenses during the separation and was unable to restore the full amount paid her under the agreement. The court said (p. 406):

''It would be manifestly unjust to require of the wife, as a prerequisite to maintaining an action to rescind a property settlement agreement on the ground of fraud, that she restore to the husband the moneys received by her under the agreement and used for living expenses and to which under the law she would have been entitled to so receive and use notwithstanding the agreement.''

(See, also, *Ramos* v. *Pacheco,* 64 Cal.App.2d 304 [148 P.2d 704].)

From the pleadings in this case, it does not appear that the question of failure of Mrs. Auclair to restore or offer to restore the cafe or its proceeds to the common fund was ever raised or considered. That question, apparently, was not forcefully presented to the trial court by way of argument. The evidence on the question is meager. After testifying that Mr. Auclair drove her off of the Burton property, no longer provided for her support, and that she was without means to support herself, she testified that she ''had to'' sell the cafe. It was necessary that she employ an attorney to defend the action and to prosecute the action to annul the alleged property settlement agreement. She asked for $250 attorneys' fees and $100 per month for support money. The trial court made no allowance to her for this purpose. After setting aside the agreement and quit-

claim deed, a full accounting of the claimed community property was had. We must assume that the $950, proceeds from the sale of the cafe, if any, were taken into consideration when making the accounting and the award of the entire community property to the wife, and that the trial judge fully considered the facts, the equities of the entire case, and that Mr. Auclair was liable for her support during all of the times mentioned (*Title Insurance & Trust Co.* v. *Ingersoll,* 158 Cal. 474, 492 [111 P. 360]); that the proceeds of the sale were consumed in living expenses required to be furnished by her husband and in enforcing her claim to the community property; that these items were all considered in the general accounting and award; and that the case comes within the recognized exception to the general rule which would not require a previous offer of restoration.

In an agreement between a husband and wife made in connection with a divorce proceeding, in settling property rights, the court has full power to examine the contract and facts surrounding its execution and may, under certain conditions, accept or reject it in whole or in part and may dispose of the community property in spite of the agreement if the provision made is against public policy or not sufficient for the wife's needs, and may provide for her support without requiring the return of what she received under the agreement. (*Roberts* v. *Roberts,* 83 Cal.App. 345 [256 P. 826]; *Kelly* v. *Kelly,* 129 Cal.App. 325 [18 P.2d 781]; *Moog* v. *Moog,* 203 Cal. 406 [264 P. 490]; 3 Cal.Jur.Supp. 677, § 155.)

Under the authorities cited, the finding that parcel No. 1 (the Burton property) is and at all times remained the community property of the parties has evidentiary support, and the order setting it aside to Mrs. Auclair is authorized under section 146 of the Civil Code. (*Crouch* v. *Crouch,* 63 Cal.App.2d 747 [147 P.2d 678].)

The right of a husband or wife to enter into engagements with the other is subject to the general rules which control the actions of persons occupying confidential relations with each other, as in trusts. The relation is declared to be confidential and all transactions between them respecting property are made subject to the same rules that control a trustee. The least overreaching or misrepresentation by a husband through which he gains the property of his wife is fraudulent and will justify an action to avoid a

settlement. (*Vragnizan* v. *Savings Union etc. Co.*, 31 Cal. App. 709 [161 P. 507].) ▊ That confidential relation exists so long as the parties are husband and wife. (*Dolliver* v. *Dolliver*, 94 Cal. 642 [30 P. 4].) ▊ A husband is bound in his dealings with his wife to the highest and best of good faith and if he would avoid the presumption of undue influence emanating from the procurement of any advantage over the wife, he should make a full and fair disclosure to her of all she should know for the protection of her interest, giving her the opportunity of independent advice. (*Estate of Cover*, 188 Cal. 133 [204 P. 583]; *Hensley* v. *Hensley*, 179 Cal. 284 [183 P. 445].) ▊ The trial court must take into consideration all of the surrounding circumstances in determining the issue whether or not the transaction was consummated in the utmost good faith. (*Murdock* v. *Murdock*, 49 Cal.App. 775 [194 P. 762].) ▊ We are convinced that the evidence in this case, if believed by the court, is sufficient to support the finding of fraud and undue influence on the part of the husband in securing the execution of the property settlement agreement and subsequent quitclaim deed.

▊ The next complaint affects the award of the community personal property to Mrs. Auclair. It is true that the pleadings make no mention of the fixtures or personal property located on parcels No. 1 or No. 2. The findings do not refer to that property. However, the judgment awarded all of the household goods, furniture, furnishings, fixtures, and personal property located on parcels No. 1 and No. 2 to Mrs. Auclair, without describing them in detail. The pleadings are limited in their scope. In a divorce proceeding, however, issues may be broadened at the trial to include questions not made an issue by the pleadings and, where the entire controversy as to the disposition of the community property is submitted to the court, it may make a fair disposition of the property rights in consonance with the law and a general accounting. (*Queen* v. *Queen*, 44 Cal.App. 2d 475, 479 [112 P.2d 755]; *Roy* v. *Roy*, 29 Cal.App.2d 596 [85 P.2d 223]; *Ramos* v. *Pacheco, supra*, p. 307.) ▊ There is evidence that certain furniture, fixtures and personal effects were community property. The award of those undescribed items to Mrs. Auclair will not be disturbed. However, such award would not be effective as to any of Mr. Auclair's personal property, which is his separate property and is located on the parcels enumerated.

As to the judgment in the Driscoll case (No. 3410), the only real question raised involves the sufficiency of the evidence to support the finding: that at all times parcel No. 1 was the community property of Mr. and Mrs. Auclair; that Mrs. Driscoll and Mr. Auclair, in April, 1943, became infatuated with each other; that Mr. Auclair drove Mrs. Auclair from the home which was located on parcel No. 1; that Mrs. Driscoll came to that home and subsequently resided there; that on October 12, 1943, Mr. Auclair executed a quitclaim deed, deeding to her the home here involved; that such deed was executed without any consideration and recorded by Mr. Auclair, with the knowledge on the part of Mrs. Driscoll that the property, at all times, constituted Mr. and Mrs. Auclair's home and was community property and that the deed was executed and accepted by her for the sole purpose of defrauding Mrs. Auclair of her rights thereto. The court found that Mrs. Driscoll had no right in and to the property.

There is evidence that Mrs. Driscoll paid certain sums of money to Mr. Auclair to apply on the purchase price, although that evidence is not very convincing. She testified that as part of the consideration for the purchase of parcel No. 1, she purchased an automobile for $513.50 for Mr. Auclair but kept title in herself, but that she was letting Mr. Auclair use it. Under the circumstances of the case the trial court had the right to believe or disbelieve the testimony produced. The finding that there was no consideration for the deed and that Mrs. Driscoll took title to the property with full knowledge of the claimed fraud has evidentiary support.

The judgment refusing to quiet Mrs. Driscoll's claimed title in and to parcel No. 1 in action No. 3410 is affirmed. The portion of the judgment in action No. 3409 awarding parcel No. 2 (the mining property) to Mrs. Auclair is reversed. The remaining portion of the judgment granting a decree of divorce and awarding the balance of the community property (parcel No. 1 and the community personal property) to Mrs. Auclair is affirmed. Respondent to recover costs.

Barnard, P. J., and Marks, J., concurred.