360 P.2d 998

Frances E. SANDE, Plaintiff-Appellant,

v.

Pere F. SANDE, Defendant-Respondent.

No. 8853.

Supreme Court of Idaho.

April 3, 1961.

May & May, Twin Falls, for appellant.

Robert W. Stephan, Twin Falls, for respondent.

TAYLOR, Chief Justice.

The parties intermarried May 17, 1934, and were divorced December 17, 1955. The divorce action was brought by the husband, defendant-respondent herein. Decree was entered in favor of the husband upon default of the wife, plaintiff-appellant here-

in. Two children were born, issue of the marriage: a daughter born March 10, 1938, and a son, July 3, 1942. On the day the divorce action was filed, November 22, 1955, a "property settlement agreement" was executed by the parties. The decree confirmed the agreement and divided the property in conformity therewith.

This action was brought by the divorced wife, March 25, 1959, to have the settlement and the decree vacated. Plaintiff alleges that she was induced to enter into the agreement by fraud and coercion; that by the same means she was induced to refrain from obtaining counsel to defend her rights in the divorce action; that she did not discover the fraud until about May 15, 1956; that as a result of the agreement and her default in the divorce action, she was deprived of her share of community property having a value at the time of the divorce in excess of $100,000.

Plaintiff alleged and testified that defendant falsely represented to her that he, or the sheriff, had received threatening letters from persons in Canada, and copies of letters purported to have been written by plaintiff containing libelous statements; that defendant feared damage actions might be brought against him, based upon the purported libelous letters, through which he might lose his fortune; that the letters purportedly written by plaintiff tended to indicate that she was not of sound mind;

that if plaintiff would execute quitclaim deeds conveying to the defendant her interest in the real property of the parties, execute the property settlement agreement and permit defendant to procure a divorce without opposition, the property would be protected from the threatened damage claims; that if she would then go to Canada, sell the property she had purchased there, clear her name, and get the supposed "racketeers off her trail," she could return and upon her return her home would be open to her and she and defendant would remarry; that if she refused to comply with defendant's requests, he would institute insanity proceedings against her; that she believed and relied upon the representations and promises made by defendant and accordingly executed two quitclaim deeds, the property settlement agreement and the acceptance of service and consent to default in the divorce action, all without advice of counsel; and that she was also activated by fear because of the threats made by defendant and his counsel.

Plaintiff denied that she had written the purported libelous letters, and denied the truthfulness of the other representations made by defendant, and testified that the representations and threats were made for the sole purpose of inducing her to execute the instruments requested by defendant.

The defendant and his counsel denied that the representations, promises or threats

charged by the plaintiff were made. Defendant's attorney testified he advised plaintiff that if she would get her affairs settled, "stop running around," settle down and stay home, perhaps she and defendant could be reconciled, and that there was no legal impediment to a remarriage; that he told her she should take the documents presented to an attorney before signing them, and that she replied "she knew what was in the papers and she was in a big hurry."

The first home of the parties was purchased by plaintiff before marriage. Improvements were made thereon by defendant after the marriage. Both parties acquired property during the marriage by inheritance. Subsequent homes were purchased and paid for in part by inherited funds or property, and in part by community funds.

A part of the property inherited by the plaintiff was 264 shares of capital stock of the Utah Power & Light Company. Plaintiff testified this stock had been a part of her uncle's estate and was appraised at $29 per share. Some time prior to the divorce, upon demand of defendant, this stock was assigned and transferred by plaintiff to defendant. Defendant testified the stock was transferred as security for, or "to cover," or to enable him to reimburse, a savings account standing the names of himself and his uncle, for the sum of $5000 which he had withdrawn from that account and sent to the plaintiff in Chicago some time in 1952. The plaintiff had gone to Chicago ostensibly to have formulated and published a teaching method developed by her. On the failure of that project, plaintiff returned the remainder of the $5000, after expenses, in the sum of $4,445.12, to the checking account of the parties in Twin Falls. Defendant testified that he probably received the benefit of the money thus returned. Presumably the whole amount was expended by the parties in the course of their mutual affairs.

After the divorce and during 1956 the defendant received $3500 as his share of the rents and profits for the years 1954 and '55 from certain farm land inherited by the defendant and his brother. From inquiries made by the trial judge it appears he may have regarded this income as a part of defendant's inheritance, rather than as community property under I.C. § 32–906.

In September, 1952, the plaintiff purchased a residence property in Canada, and paid the purchase price of $13,000 by means of her check drawn on the joint checking account of the parties. In 1955 she placed a mortgage upon this property for $7000, and used the proceeds in making a trip to Europe and India. This trip, the purpose of which was undisclosed, was one of the causes leading to the divorce. Defendant had given plaintiff a quitclaim deed to the property in Canada, which he testified was to enable her to sell the property.

By the settlement agreement and the divorce decree the plaintiff was given a 10-foot trailer house, a 1950 Nash automobile, and the house and lot in Winnepeg, Canada. All other property, including the Utah Power & Light Company stock, the moneys in checking account and savings account, the home in which the parties last resided and all household furniture and effects, was awarded to defendant, and the defendant was awarded custody of the two children.

At the close of the evidence, the trial court ruled that the burden was upon plaintiff to establish the fraud alleged by clear and convincing evidence and that the plaintiff had not established the fraud by that degree of proof. The judge expressed his view that the property settlement agreement

"was not a just agreement and that Mrs. Sande did not get what she should have had and were it now possible for me to set aside that property settlement agreement on any basis other than fraud I would be most happy to do it. * * *

"I do not find in the case and in the evidence that clear and convincing proof of fraud which must be there in order for me to grant relief to the plaintiff. I feel undoubtedly that certainly that Utah Power and Light stock which Mrs. Sande had received through the John Sittig estate should

have been hers and should have been decreed to her in the action, but unfortunately she had already endorsed it over before this took place. It must be the judgment of this court based upon the evidence, and reluctantly, that the defendant must prevail in this action."

Findings, conclusions and judgment were entered for the defendant, from which plaintiff prosecutes this appeal.

Having concluded that fraud had not been established by clear and convincing evidence, and therefore that no relief could be granted plaintiff, the trial court made no findings determining what specific property was community property, and what was the separate property of the parties, or the value thereof, at the date of the divorce.

In transactions between husband and wife, the husband, as the manager of the community property, stands in a fiduciary relationship to the wife. Parke v. Parke, 72 Idaho 435, 242 P.2d 860; Brownson v. New, Tex.Civ.App., 259 S.W.2d 277; Auclair v. Auclair, 72 Cal.App.2d 791, 165 P.2d 527.

In the Parke case we quoted from Jorgensen v. Jorgensen, 32 Cal.2d 13, 193 P.2d 728—a case involving a charge of concealment of community assets by the husband —as follows:

"'* * * As the manager of the community property the husband oc-

cupies a position of trust (Civ.Code, secs. 172–173, 158), which is not terminated as to assets remaining in his hands when the spouses separate. It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement. The concealment of community property assets by the husband from the wife in connection with such an agreement is therefore a breach of a fiduciary duty of the husband that deprives the wife of an opportunity to protect her rights in the concealed assets and thus warrants equitable relief from a judgment approving such agreement.' " 72 Idaho at page 440, 242 P.2d at page 863.

Where a postnuptial property settlement is attacked by the wife on the ground of fraud, coercion or undue influence, the burden is upon the husband to show not only that the transaction was free from any taint of fraud, coercion or undue influence on his part, but that the wife acted with full knowledge of the property involved and her rights therein, and that the settlement was fair and equitable.

" '* * * Since husband and wife occupy to each other a relation of confidence, readily subject to abuse on the part of the husband, conveyances from the wife to the husband or settlements unfavorable to the wife are presump-

tively void as being produced by fraud or undue influence. The burden is upon the husband or those claiming under the conveyance to show that the transaction was fair and free from fraud.' " De Cloedt v. De Cloedt, 24 Idaho 277, 133 P. 664, 668.

"When such an agreement is attacked the husband has the burden of clearly showing that it was fair in every particular." Hay v. Hay, 40 Idaho 159, at 169, 232 P. 895, at page 897.

Prophet v. Peterson, 77 Idaho 257, 291 P.2d 290, is a case in some respects similar to this. There the husband and wife made a property settlement agreement before divorce. Pursuant to the agreement the wife conveyed to the husband her interest in the community real property and the husband retained all the personal property. The husband obtained a decree of divorce, by default, which recited that the community property rights of the parties had been settled between them, and no disposition thereof was made by the decree. Two years later the divorced wife brought action against her former husband and his then wife, to have the agreement set aside and for a division of the community property. This court said:

"Where such post-nuptial settlement is present and relied upon as a determination of the property rights and

such agreement is challenged on the ground that it is unfair, inequitable or fraudulent, the burden is on the husband to establish its fairness and equitability, and it is not binding on the wife unless it is just or equitable in view of the circumstances existing at the time of its execution." 77 Idaho at pages 261–262, 291 P.2d at page 292.

It was noted in that case that the wife had no funds with which to employ an attorney; that she acted in ignorance of her rights and without the benefit of counsel.

"Separation agreements are upheld when untainted by fraud, undue influence or duress if the terms are fair, reasonable and equitable, considering the circumstances of the parties at the time they were made. (Cases cited.) But such agreements will be closely scrutinized, and the court will not suffer the wife to be over-reached. It will not sustain a contract that is unfair or prejudicial to her when obtained while she is under her husband's domination." Pegram v. Pegram, 310 Ky. 86, 219 S.W.2d 772, at page 774.

"It is true the jury found that appellee had knowledge of the character and amount of the community estate at the time of first partition of the same. With such knowledge that she should consent to receive less than one-fifth thereof would seem to indicate undue influence on the part of her husband in the transaction. She did not have the advice of an attorney, nor of any friend capable of giving advice in the transaction. At any rate, such knowledge does not prevent the partition from being so unfair that it should not be enforced by a court of equity." Cox v. Mailander, Tex.Civ.App., 178 S.W. 1012, at pages 1014–1015.

In Hungerford v. Hungerford, 161 N.Y. 550, 56 N.E. 117, the court set aside a separation agreement in which the wife for a consideration of $1000 relinquished all claims upon the husband and his estate for her support. The court observed that no express fraud or duress was practiced upon the wife, but that she acted without advice and as the result of ill treatment. The provision for her support was entirely inadequate and not equitable, considering the husband's means. The court set aside the agreement and announced the rule that contracts between husband and wife are upheld only where they are fair and equitable.

" * * * Because of the dominating influence which a husband exercises over the wife, transactions between them to be valid, particularly as to the wife, must be fair and reasonable and voluntarily and understandingly made. Such transactions are closely scrutinized to prevent the wife from being unfairly treated by the improper

conduct of the husband. Volume 26 Am.Jur. page 876. It has been held that whenever the advice of counsel would be of real assistance to the wife in deciding whether to enter into an agreement with the husband, it is his duty to advise her to seek such counsel. Volume 26 Am.Jur. page 687." Brewer v. Brewer, 84 Ohio App. 35, 78 N.E.2d 919, at page 922.

" '* * * A separation agreement procured by fraud or duress or voidable upon other equitable grounds is subject to rescission and cancellation in equity the same as any other contract. Where the agreement is executed directly between husband and wife it is also subject to the rules which control the contracts of persons occupying confidential relations, and is not binding upon the wife unless it is just and equitable in view of all the circumstances existing at the time when it was executed.'

"The relation of husband and wife existing, the contract was executed between the parties occupying a confidential relationship, and the burden is upon the husband to establish that it was entirely fair and equitable." Montgomery v. Montgomery, 41 Okl. 581, 139 P. 288, at page 289.

In McKay v. McKay, 184 Cal. 742, 195 P. 385, the Supreme Court of California held that in a transaction between husband and wife by which the husband obtains an advantage, the presumption arises that it was obtained by undue influence and without consideration.

"It is the duty of the husband to show the payment of an adequate consideration, full disclosure as to the rights of the wife, the value and extent of the community property, and that the wife had competent and independent advice in the execution of separation agreements. Beals v. Ares, 25 N.M. 459, 185 P. 780." Cornell v. Cornell, 57 N.M. 170, 256 P.2d 534, at pages 536–537.

"As a general rule, voluntary settlements of property rights are binding on the parties and will be upheld if they are fair and equitable, untainted with fraud, collusion, coercion, undue influence, or the like, although, in subsequent actions for divorce, such settlements or agreements are not binding on the court and may be disregarded if the court is satisfied that they are unfair, unjust, or do not constitute a proper division of the property." Lee v. Lee, 27 Wash.2d 389, 178 P.2d 296, at page 302; Bernier v. Bernier, 44 Wash.2d 447, 267 P.2d 1066, at page 1068.

" * * * The wife should employ an attorney of her own choosing before

making such a contract, and it is held that if the wife does not have an attorney and she signs a contract prepared by the husband or his attorney the parties occupy a confidential relationship, and the contract must be fair and reasonable or she may avoid it." 17A Am.Jur., Divorce and Separation, § 898.

See also: Matassa v. Matassa, 87 Cal.App. 2d 206, 196 P.2d 599; Simmons v. Briggs, 69 Cal.App. 447, 231 P. 604; Norris v. Norris, 50 Cal.App.2d 726, 123 P.2d 847; Auclair v. Auclair, 72 Cal.App.2d 791, 165 P.2d 527, at page 532; In re Poole's Estate, 156 Cal.App.2d 768, 320 P.2d 62; Payne v. Payne, 215 Or. 412, 332 P.2d 1075, 335 P.2d 606; Annotation 5 A.L.R. 823; McConnell v. McConnell, 98 Ark. 193, 136 S. W. 931, 33 L.R.A.,N.S., 1074, Syl. No. 1; 2 Pomeroy's Equity Jurisprudence, § 956, p. 2040.

In addition to the rule placing the burden of proof on the husband, as above stated, there is a further general rule that where the separation agreement is inequitable and unfair to the wife, and where it manifestly appears there has been overreaching on the part of the husband, equity will not enforce the agreement, but will grant relief to the wife, even though no actual fraud or duress was resorted to by the husband in procuring it. (Authorities supra.) Although not necessarily so limited, this rule is especially applicable where the wife was ignorant of her rights, and acted without independent counsel. In such case if the wife's remedy is not barred by limitations, laches, or estoppel, she may maintain an independent action therefor. Prophet v. Peterson, supra.

In the last mentioned case the agreement was not incorporated in, or confirmed by, the decree. Here the agreement was attached to the decree, incorporated therein by reference, and was ratified and confirmed, and the parties were ordered to comply with its provisions. However, where such an agreement is not binding on the wife, or is voidable by her, and the divorce decree was taken against her by default, and the issues affecting the validity and binding force of the agreement were not litigated in the divorce proceedings, the decree therein is not a bar to the wife's independent action for relief from the agreement, and the decree may be modified or set aside to the extent necessary to provide proper relief. Cornell v. Cornell, 57 N.M. 170, 256 P.2d 534; Payne v. Payne, 215 Or. 412, 332 P.2d 1075, 335 P.2d 606; Brownson v. New, Tex.Civ.App., 259 S.W. 2d 277.

The trial court erred in ruling that no relief could be granted plaintiff except upon proof of actual fraud or duress, and in placing the burden of such proof upon the plaintiff. The judgment is therefore re-

versed and the cause is remanded with directions to the district court to retry the issues in the light of the rules herein expressed, and, upon the present record, or upon the present record and such further evidence as either party may desire to present, make its findings and conclusions, and enter judgment accordingly.

In view of this mandate we deem it inappropriate to discuss other issues.

Costs to appellant.

SMITH, KNUDSON, McQUADE and McFADDEN, JJ., concur.